HON. LOYAL C. KELLOGG,
HON. ASAHEL PECK,      } ASSISTANT JUDGES.
HON. BENJAMIN H. STEELE.

---

EBENEZER ABBOTT *v.* THE TOWN OF WOLCOTT.

*Highways and Bridges.   Statute.*

A cross timber passing from one side of a bridge to the other under the string pieces, to which the string pieces were bolted and on which they rested, did not constitute such a support of the string pieces between the abutments as is contemplated by section 73, chapter 25, of the General Statutes.

The word "supports," as used in the statute, refers to that upon which the bridge stands, or rests, and which supports it from beneath, such as the abutments upon the banks, or piers, or trestles, standing between the abutments, and on which the string pieces rest.

Abbott *v.* Town of Wolcott.

Section 73, chapter 25, General Statutes, provides that it shall not be lawful for any person to drive a horse. or other beast, at a rate faster than a walk, on certain described bridges, and provides a penalty therefor. The next section provides that no person shall be liable to said penalty *unless a board be posted up at each end of the bridge with directions to the effect mentioned in the preceding section, painted thereon.* *Held,* that though such boards were not posted on such bridge, it would be unlawful for a person to drive thereon faster than a walk—though in consequence of the absence of the boards he might not be subject to the penalty.

If a person receive an injury while engaged in such illegal driving, but not occasioned by it, but solely from an insufficiency of the bridge, he may recover against the town for his injury.

The plaintiff received an injury by the springing of the bridge occasioned by driving at a trot, when by the statute he had no right to drive faster than a walk. The bridge was good and sufficient except in the matter of its springing when driven upon on the trot, *Held,* that the town was under no legal obligation to provide a bridge sufficient for such use.

If the bridge was put in motion by another team, preceding the plaintiff's, on a trot it was an illegal act on the part of the driver of such team, and the town would not be responsible for the result of his misconduct.

ACTION ON THE CASE, to recover for an injury alleged to have been occasioned by the insufficiency of a bridge in the town of Wolcott. Plea, the general issue. Trial by jury at the December Term, 1864, BARRET, J. presiding. The facts are fully stated in the opinion of the court.

When the evidence was all in, the defendant claimed and made the point, that it being proved that said bridge was made with string pieces more than thirty feet long between the supports on which they rested, and that the plaintiff was driving upon said bridge upon a trot, up to and at the time the board broke and he fell off his seat the plaintiff was not entitled to recover.

There being no question about the facts upon which said point was predicated, the court sustained the point, and directed a verdict for the defendant. The plaintiff excepted.

*Sewall Fullam,* for the plaintiff.

*Powers & Gleed,* for the defendant.

The opinion of the court was delivered by

PIERPOINT, Ch. J. This action is brought to recover for injuries sustained by the plaintiff in consequence of an alleged insufficiency of a bridge in the town of Wolcott, which it is conceded the defendant town was bound to maintain and keep in repair. The injuries complained of, were sustained by the plaintiff while in the act of

driving his team, consisting of a span of horses and a double wagon, cross said bridge upon a trot; that by reason of the springing motion of the bridge a board supporting the seat upon which he was sitting broke and he fell upon said bridge and was injured in the man ner complained of.

The bridge consisted of a single span, resting upon abutments at each end, and was made by six string pieces extending from one abutment to the other, on which the planking or floor of the bridge was placed, and without any support other than the abutments on which they rested, except that on each side of the bridge above the floor were placed timbers extending from one abutment to the other that were fastened down to the floor near the center by a bolt passing through this timber, the floor, the string pieces below, and a cross timber that passed from side to side under the string pieces, and on which the string pieces rested; the whole fastened together by means of bolts and keyes. The distance between the abutments constituting the length of the span, was between 35 and 36 feet.

No claim was made on the part of the plaintiff "that the bridge was not good and sufficient except in the matter of its springing when driven upon on a trot."

By the 73d section of chapter 25, General Statutes, it is provided that "it shall not be lawful for any person to drive any horse, or other beast, at a rate faster than a walk, on any bridge with string pieces thirty feet long between the supports on which they rest, or on any bridge supported by one or more arches, etc., and any person guilty of such offence shall forfeit and pay as a penalty, the sum of one dollar for each offence, together with damages for all injuries thereby done to such bridge, which may be recovered in an action in the name and for the benefit of the town," etc.

It is insisted by the plaintiff that the bridge on which the injury occurred does not come within the provisions of this statute, for the reason that the cross timber that was under the string pieces and on which they rest, and which is held in place by the bolts which passed up through the outer string pieces and the timber above, constituted such a support of the string pieces between the abutments as is contemplated by the statute.

We think the word "supports," as used in the statute, refers to

that upon which the bridge stands or rests, and which supports it from beneath, such as the abutments on the banks, or piers, or trestles, standing between the abutments, and on which the string pieces rest. A bridge may be strengthened and stiffened by various appliances upon the top, such as braces and rods or bolts, or by a single timber as in this case, but they all constitute a part of the bridge and must be supported and kept in place by abutments, piers or trestles; braces and bolts add to the sustaining power of the string pieces, by distributing the weight over a greater surface and through the length of the string pieces, and bringing the pressure to bear near the ends of the string pieces where they rest or are supported by the abutments or piers, thus enabling the bridge to sustain a much greater weight than it could if the weight all bore on a single point. These braces may be said in one sense to support the string pieces, but not in the sense that the term is used in the statute; the braces themselves rest upon the string pieces and the whole is supported by the abutments or piers.

In this case the bridge was strengthened by means of timbers laid upon the plank over and lengthwise of the outside string pieces, and by bolting the two together, thus adding to the strength and stiffness of the bridge to the extent of the sustaining power of such top timber. The effect produced, in this respect, is substantially the same as would have been produced if these timbers had been placed *under* the outside string pieces. They would then properly have been called string pieces, and the bridge would then have a double set on the outside. They are little else than string pieces when placed on the top, although when placed on the top they answer the additional purpose of keeping the planking in place, and serve to a certain extent, as a muniment, to prevent the track from going off the side of the bridge. The timber that extends from one outside string piece to the other, adds little or nothing to the strength or stiffness of the bridge. Its only effect in that respect would be by extending the pressure on the inside string pieces to the outside ones; and that is substantially done by the planking or floor of the bridge. The outside string pieces receive no aid from this timber, and it does not support the inside ones in the sense contemplated by the statute.

Treating this bridge as coming within the provision of said stat-

ute, the question then arises as to the effect, the fact that the plaintiff was driving his team on the bridge, upon a trot, at the time the accident occurred, is to have upon his right to recover.

Section 74 of said chapter 25, provides that " no person shall be liable to the penalty in the preceding section of this chapter, unless the selectmen, or the directors of the corporation, as the case may be, shall cause to be posted up and kept at each end of such bridge, in some conspicuous place, a board with directions to the effect mentioned in the preceding section of this chapter, painted on the same in plain legible characters."

It does not appear from the exceptions whether such a board was put up or not. The case has been argued in this court, on both sides, as though such a board was not up. If such was the fact, it is clear the town could have no claim upon the plaintiff for the penalty. But notwithstanding that, was the act of the plaintiff in driving over this bridge upon a trot a legal act? The legislature has expressly declared that such an act shall not be lawful, and has also imposed a penalty upon the party committing it. By the 74th section the penalty is not incurred unless the officers of the town keep up such board. An act may be made illegal solely because the law imposes a penalty upon the party committing it. In such case it is the penalty that makes the act illegal, and unless the act is so done as to incur the penalty it is not illegally done. So on the other hand, an act may be expressly declared to be illegal, without the imposition of any penalty on the party committing it. Such a declaration amounts to a legal prohibition of the act, and it cannot thereafter lawfully be done. And although the commission of the act does not subject the party to a penalty, he may thereby subject himself to certain liabilities, and deprive himself of certain rights as the legal consequence of the illegality of his act.

By the act under consideration the legislature have virtually prohibited the driving of a horse faster than a walk on any bridge like the one on which the accident happened. They have also imposed a penalty on the driver for so doing. The illegality of the act, however, is not dependant upon the penalty. The act is made illegal, even though no penalty had been imposed. Neither is its illegality made to depend in any manner upon the contingencies or circumstances

upon which the liability to the penalty is dependant, that is upon the putting up of the board as required by the statute.

This, we think, is the fair and legitimate construction of the whole act taken together. Hence the act of the plaintiff in driving upon the bridge in the manner stated in the bill of exceptions was an illegal act.

It has been said in argument that such a construction will subject the traveler to a great annoyance ; that he may be a stranger and ignorant of the length of the string pieces between the supports, and that it would be very inconvenient for him to stop and measure them. If it imposed this obligation upon the traveler, there might be force in it. But the only obligation it imposes on him is, that he act like a prudent man, and when he comes to a bridge, hold up his team and let the horses walk across it. To me, personally, rapid driving across bridges appears to be a reckless business, others may view it differently.

Considering the act of the plaintiff as illegal, did the illegal act contribute to the result complained of, for if it did not it is difficult to see how the fact that he was engaged in an illegal act should deprive him of his right to recover of the town for an injury that resulted solely from an insufficiency of the highway, and with which his illegal act had no connection.

The case does not show whether the speed with which he drove on to the bridge contributed to the injury or not. Yet it is difficult to see how it could be otherwise, as the case expressly finds that the accident was caused by the springing of the bridge. It appears that there was another team upon the bridge at the same time that was being driven on a trot, and it may be said that the entire springing of the bridge was produced by the other team. How this was is a question of fact, which, if material in this case, should have been left to the jury.

But, conceding that the plaintiff's manner of driving did not contribute to the injury, the question then arises, did the injury result from an insufficiency of the bridge.

The statute declares that if any special damage shall happen to any person, etc., by means of the insufficiency or want of repairs of any highway or bridge in any town which said town is liable to keep

---

Abbott *v.* Town of Wolcott.

---

in repair, the person sustaining such damage shall have the right to recover the same, etc.    General Statutes page 200.

The statute also provides that all highways and bridges within the bounds of any town, shall be kept in good and sufficient repair at the expense of such town.

When is a bridge in " good and sufficient repair " within the meaning of the statute?"    Obviously when it is in a condition safely and securely to answer all the uses for which it was designed, and all the purposes that the traveling public have a legal right to use it for, or require of it.    This case shows that it was conceded that the bridge in question was " good and sufficient except in the matter of its springing when driven upon on the trot."    As the traveler had no legal right to use the bridge in that manner, the town was under no legal obligation to provide a bridge sufficient for such use, and for all other purposes the case shows the bridge was sufficient.

Suppose the legislature should see fit to prohibit all persons driving on to bridges of the character of this one, with loads of greater weight than 10,000 pounds, would the towns be under obligation to maintain the bridges of sufficient strength to sustain loads in their passage over of a greater weight?    Clearly not ; and if a traveler should attempt to pass with a load of greater weight, and should be injured in consequence of the failure of the bridge, he would be without remedy.    So of the man who attempts to drive his team over upon a trot.    It is doing in either case an unlawful act, and one that the town is under no obligation to provide sufficient means for the safe accomplishment of.    The party attempting it takes the risk.

Again it may be said the plaintiff was injured by the springing of the bridge, and it does not appear that his act contributed to it, but it is quite clear it did not result from an insufficiency of the bridge. If the bridge was put in motion by Carlysle who preceded the plaintiff with his team on a trot, that was an illegal act on his part and the town is not responsible for the result of his misconduct.