SAMUEL S. JOHNSON *v.* THE TOWN OF IRASBURGH.

*Highways.    Travelling on Sunday.*

The necessity which will excuse one for travelling on Sunday, must be a real and not a fancied one. It is not an honest belief that a necessity for travelling exists, but the actual existence of the necessity, which renders travelling on Sunday lawful.

A person travelling on Sunday in violation of the statute prohibiting travelling on that day except from necessity or charity, cannot recover for injury sustained by reason of the insufficiency of the highway, while so travelling.

CASE for injury on a highway. Plea, the general issue and trial by jury, September term, 1873, REDFIELD, J., presiding.

Previous to the alleged injury, the plaintiff had ordered some fish from Boston for himself and a neighbor, Barrows, and on Saturday before the Sunday of the accident, he took two kegs of the fish, one for himself and one for Barrows, from Barton Landing, and carried his keg home, and left Barrows's in Brown's, another neighbor's, carriage-house. Barrows was a seventh-day man, keeping Saturday for Sunday, and was that day at church.

On Sunday the plaintiff and a boy living with him, with a wagon drawn by one horse, drove to Barrows's for the purpose, as he testified, of notifying him that the fish was at Brown's ; and he gave as a reason for going on Sunday instead of the following Monday, that the fish was liable to injure, unless at once put in a cooler place. In going to Barrows's, the plaintiff passed by Brown's, but he testified that he could not remember whether he then took the fish and carried it to Barrows's or not ; but Barrows and two other witnesses testified that he did carry it to Barrows's on that occasion ; and Barrows testified that the keg of fish thus delivered to him, kept without taint, and what was not used, was perfectly sweet a year after  It was while the plaintiff was returning from Barrows's that he received the injury complained of.  The plaintiff admitted on trial, that the only business upon which he was travelling was, to attend to the fish.  The defendant claimed that the plaintiff could not recover, because he was travelling on Sunday in violation of the statute.  The court submitted to the jury to find specially whether it was necessary in order to preserve the fish from taint or injury, that the plaintiff should attend to it on Sunday instead of the following Monday. The jury returned a general verdict for the plaintiff, and a special verdict that it was *not* necessary to look after the fish on Sunday instead of Monday.  *

After verdict, the defendant moved for judgment for the defendant ; but the court overruled the motion, to which the defendant excepted.   When the court intimated its purpose of requiring a special verdict as to the necessity of taking care of the fish on Sunday, the plaintiff requested the court to instruct the jury to find whether the plaintiff honestly and fully *believed* that the fish would spoil or become much injured unless it was taken care of on that Sunday ; but the court refused the request, and held that the response thereto would be immaterial ; to which the plaintiff excepted.

*J. T. Allen* and *Edwards & Dickerman*, for the plaintiff.

It is insisted on the part of the defendant that the plaintiff cannot recover for the reason that he was travelling on Sunday, in

violation of § 3, ch. 93, of the Gen. Sts., when the injury happened to him. The plaintiff insists that that is no bar to his right of recovery. The case of *Sutton* v. *The Town of Wauwatosa*, 29 Wis. 21, and 9th Am. Rep. 534, very ably and fully sustains the plaintiff's position. And the same doctrine is sustained by the following cases. *Woodman* v. *Hubbard*, 5 Foster, 67; *Norris* v. *Litchfield*, 35 N. H. 271; *Morton* v. *Gloster*, 46 Me. 520; *Bigelow* v. *Reed*, 51 Me. 325; *Hamilton* v. *Goding*, 55 Me. 428; *Philadelphia*, *Wilmington & Baltimore R. R. Co.* v. *Philadelphia & Havre de Grace Steam-Towboat Co.* 23 How. 209; *Mohney* v. *Cook*, 26 Penn. 342; *Baker* v. *City of Portland*, 58 Me. 199, 274; *Kerwhacker* v. *Railway Company*, 3 Ohio St. 172; *Bird* v. *Holbrook*, 4 Bing. 628; *Steel* v. *Buckhardt*, 104 Mass. 59; *Hall* v. *Corcoran*, 107 Mass. 251; *Barnes* v. *Ward*, 9 C. B. 392, 420; *Welch* v. *Wesson*, 6 Gray, 505; *Dimes* v. *Petley*, 15 Q. B. 276; *Bateman* v. *Bluck*, 18 Q. B. 870; *Spofford* v. *Harlow*, 3 Allen, 178; *Nodine* v. *Doherty*, 5 Am. Law Reg. n. s. 346.

The request of the plaintiff touching the special verdict, is, in substance, a request to charge the jury that if the plaintiff honestly and fully believed that the fish would spoil or become much injured unless they were taken care of on that Sunday, then it would be lawful for the plaintiff to take such measures to preserve the fish as he did take, and that the defendant would be liable if the plaintiff made out his case in other respects. But the court refused so to hold, and in substance ruled that the plaintiff's belief and views as to the necessity of taking care of the fish were immaterial, and were no justification for his travelling on Sunday.

We insist if the plaintiff fully and honestly believed that it was necessary to take care of the fish and preserve it from taint and destruction, it became his duty to take the course he did, as much as though an actual necessity existed, and that he would be justified in so doing, although in fact it should turn out that it was not necessary.

*William W. Grout*, for the defendant.

It is conceded that the damages recovered accrued while the plaintiff was travelling over the defendant's highway on the "Sab-

Johnson v. Irasburgh.

bath or first day of the week." It is also conceded that the business on which the plaintiff was travelling, was purely secular, viz: the delivery of a barrel of salt codfish, lest it taint and take injury if the delivery was delayed till the following Monday. The jury expressly found that the travelling for this purpose was not a work of necessity—thus presenting the question, whether one can recover damages for mere passive negligence on the part of another, when the one, at the very time of the damage, and in the very act of exposing himself to the injury, is himself a wrong doer—is himself acting in violation of the law ordained by both God and man—and is criminally liable under both. "Remember the Sabbath day to keep it holy." Exodus, ch. 20, verses 8, 9, 10, 11. No person shall travel on the Sabbath or first day of the week, except from necessity or charity; and any person so offending, shall pay a fine not exceeding two dollars. Gen. Sts. ch. 93, § 3. Highways are made only for lawful purposes. The liability imposed upon towns for injury or damages upon highways, springs from no moral obligation, but is entirely without consideration, except that resting in public policy.

The plaintiff may contend that the statute creating liability on the part of towns is absolute in its terms. So it is in its letter, but the courts have never so construed it. They have always held that the slightest contributory negligence or fault on the part of one suffering damage, would defeat the action. The application of this principle is decisive of the case at bar. The plaintiff was wrongfully upon the highway; he had no legal or moral right there; he was liable to a criminal prosecution for being there. While there the accident happened. How can it be said that it happened through no fault on his part? The use of the highway in violation of law, placed the plaintiff, as to all the consequences of such use, outside the protection of the law, and he used it at his peril.

The precise question in the case at bar has never been decided by the courts of this state. In Massachusetts the doctrine contended for by the defendant is well established by repeated decisions. New Hampshire holds the opposite view. It is also claimed that a like view is taken in some of the Middle and West-

ern states. *Jones* v. *Andover*, 10 Allen, 18; *Bosworth* v. *Swanzey*, 10 Met. 353; *McClary* v. *Lowell*, 44 Vt. 116; *Hinckley* v. *Penobscot*, 42 *Me.* 89; *Bryant* v. *Biddeford*, 59 Ib. 193; *Crocker* v. *Bangor*, 57 Ib. 423.

The opinion of the court was delivered by

Ross, J. The necessity which will excuse one for travelling on the Sabbath must be a real and not a fancied necessity. The statute reads, "No person shall travel on the Sabbath or first day of the week, except from necessity or charity." Gen. Sts. ch. 93, § 3. It is not an *honest belief* that a necessity for travelling exists, but the *actual existence of the necessity*, which renders travelling on the Sabbath lawful. Hence, the court properly refused to instruct the jury as requested by the plaintiff. The jury, under proper instructions, have found that the travelling of the plaintiff on the occasion when he received the injury, was not from necessity, and therefore unlawful. They have also found that he has suffered damage from injuries received by reason of the insufficiency of a highway which it was the duty of the town to keep in good and sufficient repair. On this verdict the defendant moved for judgment in its favor, which the court below, *pro forma*, overruled, and rendered judgment for the plaintiff, against the exception of the defendant. Thus the question is distinctly presented for decision, whether a town is liable for damages sustained through the insufficiency of a highway which it is legally bound to keep in repair, to one who is unlawfully travelling on such highway, or travelling on the Sabbath without a legal excuse. The question is not, whether the plaintiff is barred from recovering damages which he would otherwise be entitled to recover, because he was, at the time he received the injury, committing an unlawful act, or travelling at an unlawful rate of speed, but whether the town was under a legal duty to furnish him a safe highway to travel over, when, at that precise time, he was forbidden by law to travel over the highway. This precise question is now for the first time presented to this court for decision. In *Abbott* v. *Wolcott*, 38 Vt. 666, a question somewhat analogous was decided. The plaintiff in that case was injured from the

springing of a bridge while he was trotting his horse upon it. The bridge was of such construction that, by law, the plaintiff was forbidden to drive faster than a walk thereon.   The plaintiff might lawfully travel on the bridge, but not at the rate of speed he used.   It was held he could not recover.·  The decision is put upon two grounds: first, that the plaintiff's illegal act in driving faster than a walk must have contributed to the springing of the bridge, and so contributed to the happening of the accident which caused the injury; second, if this was not so, that inasmuch as it was conceded that " the bridge was good and sufficient, except in the matter of its springing when driven upon on the trot," and as the plaintiff had no right to use it in that manner, the town was under no legal obligation to provide a bridge for such use; in other words, that the town had fully discharged its duty towards the plaintiff, in that it had provided as good a bridge as the law required, and that the accident happened and the injury was occasioned by the unlawful act of the plaintiff, or of one Carlysle, who was at the time also trotting his horse on the bridge, and not from any failure of the town to discharge its duty in the premises. The question at bar has arisen in other states, but the courts of those states have not been so fortunate as to arrive at the same solution of it.   The courts of Massachusetts and Maine have repeatedly decided that a plaintiff could not recover under such circumstances.    *Janes* v. *Andover*, 10 Allen, 18; *Bosworth* v. *Swanzey*, 10 Met. 353; *Hinckley* v. *Penobscot*, 42 Me. 89; *Bryant* v. *Biddeford*, 59 Me. 193    In some of the other states it has been ·held that the fact that the plaintiff was travelling on the Sabbath in violation of law, did not relieve the town from its liability for damages sustained through the insufficiency of its highway.   So far as I have had access to such decisions, they assume that the town was liable to the plaintiff for the insufficiency of its highway, and proceed to consider whether the unlawful act of the plaintiff relieved the town from such liability.   *Sutton* v. *Waunatosa*, 29 Wis. 21, is one of the latest decided cases of this kind, and one on which the plaintiff especially relies.   It therefore demands some consideration.   In the opinion, which was delivered by Ch.

J. Dixon, very many of the cases are reviewed. It assumes that the decision of the cases against the right of the plaintiff to recover, rests either upon the ground that the plaintiff's illegal act of travelling on the Sabbath contributed to the happening of the accident, and for that reason deprived him of the right of recovery, or that the fact that he was engaged in an unlawful act at the time he received the injury, bars his right of action. Both of these grounds are combatted earnestly, and, I think, successfully. It is difficult to maintain that the traveller's illegal act in such cases contributed to the happening of the accident. The insufficiency of the highway remaining the same, and the traveller being at the place of the insufficiency under the same circumstances on any other day of the week, the same accident and injury would have befallen him. A contributory cause is one which, under the same circumstances, would always be an element aiding in the production of the accident. The fact that the traveller is unlawfully at the place of the accident, does not contribute to the overturn of his carriage or to the production of the accident. The same forces and causes would have overturned the carriage or caused the accident as well on a week day as on the Sabbath; as well when the traveller was lawfully at the place of the accident as when unlawfully there. It is sometimes asserted that if the injured party had not been unlawfully travelling he would not have been at the place of insufficiency, and would not have received the injury. The same is true of all injuries on highways. The injured person must be present at the place of the accident in order to receive the injury. Whether he is lawfully or unlawfully there, when there, the same causes and forces produce the accident in the one case, as in the other; and the fact that the injured one is present unlawfully, is not a factor which contributes to the happening of the accident. Hence, the decisions against the traveller's right of recovery must rest upon some other basis than that his unlawful act, or travelling unlawfully, was a contributory cause to the happening of the accident within the legal meaning ordinarily attached to those words. Neither, as I think, can the fact that the party receiving the injury, was, at the time of the injury, engaged in an unlawful act, deprive him of the

right of recovery.   If the plaintiff, at the time of the injury, had been profaning the name of Deity, he would have been engaged in an unlawful act; but no one would hold that such an act would bar him from recovering of the town if it were otherwise liable for the injury sustained.   The town could not relieve itself from the consequences of its own wrong or neglect, by alleging the illegal act of the plaintiff.   Punishments are provided for all unlawful acts, but their administration is not committed to the discretion of towns; neither has a town the right to add to the prescribed penalty the injuries resulting from its own wrongful act or neglect.   The travelling by the plaintiff without excuse, on the Sabbath, was not an offense against the town, and it cannot excuse its wrong done to him, if wrong it be, by recrimination. The allegation of a wrong done by a plaintiff to a third party, never furnished a defendant a good legal answer for a wrong done by himself to that plaintiff.   Several of the cases cited by the plaintiff sustain and illustrate this proposition.

There may be cases in which a party injured through the insufficiency of a highway while engaged in an unlawful act, could not recover, and in which the unlawful act would be the remote cause of his inability to recover.   It may be questionable whether a criminal party, like a thief, robber, or kidnapper, who should be injured while using a highway in transporting and securing the fruits of his crime, could recover for such injuries, though occasioned by the insufficiency of the highway, of the town ordinarily responsible for such insufficiency.   In all such cases, I apprehend, his unlawful act would not bar the criminal party from sustaining an action which had once attached against the town, but that no such right of action would arise, because the town would be under no obligation to furnish him a safe highway for any such purpose.

I think it is quite clear, that the decisions against the rights of the plaintiff to recover in such cases, if sustainable, must rest upon some other ground.   While I am quite ready to yield my assent to the reasoning of the learned judge who delivered the opinion in the case last cited, I am not so well satisfied that the opinion meets the real point raised for decision.   As heretofore remarked,

the question is not, is the plaintiff barred from recovering for injuries sustained through the insufficiency of a highway, and which he would otherwise be entitled to recover, because he was, at the time he received the injuries, engaged in an unlawful act, but was the town under a legal liability to furnish him a safe highway to travel on, at a time when he was, by law, forbidden to travel on it? The liability of towns for the sufficiency of their highways is wholly imposed by statute. The right of the traveller to recover for injuries sustained through such insufficiency, is also conferred by statute. No such liability or right existed at common law. The duty and liabilities of towns in regard to their highways, are due only to travellers, to that class who have the right to pass and repass thereon, and continue only so long as they are in the exercise of that right. When one ceases to use a highway for the purpose of passing and repassing thereon, the duty and liability of the town toward him in regard thereto, cease. This has been repeatedly decided. *Spencer* v. *City of Salem*, 3 Allen, 374; *Richards* v. *Enfield*, 13 Gray, 344; *Blodgett* v. *City of Boston*, 8 Allen, 237; *Stimson* v. *Gardiner*, 42 Me. 248; *Orcutt* v. *Bridge Co.* 53 Me. 500; *Baxter* v. *Winooski Turnpike Co.* 22 Vt. 124; *Abbott* v. *Wolcott*, 38 Vt. 666; *Sykes* v. *Pawlet*, 43 Vt. 446; *Hayward* v. *Rutland*, unreported.

We do not think any good lawyer would contend that a town would be liable for damages sustained through the insufficiency of one of its highways, by a circus performer who might chance to pitch his tent and establish his ring on the highway, and who should happen to be injured while performing his feats of horsemanship or of lofty tumbling. In such a case the town would not be liable, because it would not be under any legal duty to provide him a highway for any such purpose. Many cases might be supposed in which the town would not be liable to one injured through the insufficiency of one of its highways, because the one receiving the injury would not be using it for a purpose contemplated by the statute, and hence the town would be under no duty towards him. As a town is liable for such injuries only by force of the statute, its liability must be limited to those cases in which the

statute has imposed the duty upon it to provide a safe highway for the injured party in the particular use to which he was, when injured, putting it. It is competent for the legislature when creating this duty and liability, or subsequently, to prescribe the limitations thereof. It may be limited to a particular class of individuals, or to special occasions. Is it reasonable to suppose that the statute was intended to impose this duty and liability in behalf of a person who was forbidden to use all highways for the purposes of travel, and at a time when he was so forbidden to use them? Can he be a traveller within the purview of the statute who is forbidden to travel? The question is its own answer. The statute imposing this duty and burden was first enacted March 3, 1797. 1 Tolman's Sts. 452, § 13. The same has continued in force, with some immaterial modifications, so far as regards this question, to the present time. On the same March 3, 1797, was enacted the statute against travelling on the Sabbath, not exactly in its present form, but in substance the same. 1 Tolman's Sts. ch. 27, §§ 1, 6. Thus, at the same time, the duty was imposed upon towns to provide safe highways, and they were rendered liable for injuries sustained through the insufficiencies of such highways. All persons were forbidden to use them on the Sabbath except for certain purposes. The statute limiting their use, furnishes the measure of the duty and liability imposed. In other words, the duty and liability imposed are co-extensive with the purposes for which persons can legitimately use the highways, and no greater. A statute which should forbid the use of highways for certain purposes, or on certain days, or in a certain manner, would limit the duty and liability of towns in regard thereto. The statute has limited the amount of load one may carry on a highway to 10,000 lbs. He who attempts to draw a greater load, does it at his own risk, because when he puts himself in such a position, the town owes him no duty, and is under no liability for injuries received through the insufficiency of its highways. The plaintiff when injured was forbidden by law to use the highway, and by reason thereof the defendant town owed him no duty to provide him any kind of a highway, and therefore

was under no liability for any insufficiency in any highway. So far as the town was concerned, he had no business to be at that place at that time; and hence he was there at his own risk. If he has sustained damages, they fall upon himself and not upon the town, because the statute has not made the town liable for them.

Judgment reversed, and judgment for the defendant to recover its costs.