# MARY LATREMOUILLE, ADMR., *v.* BENNINGTON & RUTLAND RY. CO.

*Motion for verdict.    Negligence.    Master and servant.    Assumption of obvious danger.    Known incompetency of fellow servant.    Practice.*

1.  When the defendant, after excepting to the refusal of the court to direct a verdict at the close of the plaintiff's case, proceeds with the trial, he thereby waives the exception.

2.  A motion to direct a verdict, made after the testimony is closed, is in effect a demurrer to the evidence, and should be granted when the evidence, viewed in the light most favorable to the plaintiff, does not fairly and reasonably support his claim.

3.  Negligence is ordinarily a mixed question of law and fact; but it is for the court to say whether there is any evidence from which negligence can be fairly and reasonably inferred.

4.  Deceased was a car inspector and repairer, and had been engaged in that capacity in and about defendant's yard at Rutland for fifteen years.   When a car needed repairs it was optional with him to repair it where it stood, have it switched to a track especially set apart for that purpose, or taken into the shops.   Whenever he needed assistance he applied to the foreman of the wood-shop, who delegated one or more persons for that purpose.   Upon the occasion in question he undertook to repair the drawbar of a car which was standing upon one of the main tracks.   He applied for assistance and was furnished with a man with whom he had worked for several years last passed. He directed the assistant to hold the drawbar in position while he himself went under the car for the purpose of putting a pin in position.   While so engaged a train, which neither of them could see from the .position which they occupied, backed onto the car underneath which the deceased was, inflicting injuries from which he died.   The plaintiff claimed that the defendant was negligent in not providing a suitable place in which to make the repairs, and in not furnishing a competent helper or helpers.   *Held,* that no recovery

Latremouille *v*. Bennington & Rutland Ry. Co.

could be had, for under the circumstances the danger was in both respects an obvious one which the deceased assumed by putting himself in that position.

5. As bearing upon the question whether a given person is a competent helper to a car-repairer, it is not proper to ask a witness whether he is bright and intelligent.

6. A request upon the part of the defendant to charge that the fact that the deceased was injured while under the cars of the defendant in the line of his duty raised no presumption of negligence, should have been complied with, although the plaintiff did not claim to the contrary.

7. A servant assumes in his employment not only those damages of which he has actual knowledge, but also those of which he reasonably ought to have known.

8. A servant also assumes the risk arising from the known incompetency of a fellow servant, of which he does not complain or make known to his employer.

9. When an exception to the failure of the court to direct a verdict for that the evidence does not entitle the plaintiff to go to the jury, is sustained, the case will be remanded for a new trial.

Case for the negligence of the defendant resulting in the death of the plaintiff's intestate. Trial by jury at the September term, 1890, Taft, J., presiding. Verdict and judgment for the plaintiff.

The defendant excepts.

The facts appear in the opinion.

The second, seventh and eighth requests were as follows :

"2. The fact that the deceased was injured under the cars in the line of his duty raises no presumption that the railway company was negligent in any of the respects claimed.

7. If Latremouille, when he went to repair the car in question, knew, or by the exercise of ordinary observation or reasonable skill or dilligence in his department of service, might have known, that he was going to be exposed to the dangers arising from moving trains or shifting cars, or that the help furnished him was incompetent, insufficient or improper, and notwithstanding such knowledge, or means of knowledge, he went under the

car to make repairs, he assumed the risks of being injured, and waived all damages and injury that should thereby result to him.

8.   When an employe after having opportunity of becoming acquainted with the risks of his situation, accepts them, he cannot complain if he is subsequently injured by such exposure."

*J. C. Baker*, for the defendant.

It is the duty of the court to direct a verdict when there is no evidence in the case which tends to support the plaintiff's claim.   *Hynds* v. *Hays*, 25 Ind., 31;  *Clark* v. *Railroad*, 36 Missouri, 202;  *St. Johnsbury* v. *Thompson*, 59 Vt. 300;  *Story* v. *Brennan*, 15 N. Y. 524;  1 Gr.   Wat.   New Trials, 278;  Prof. Jury Trial, Sec. 351.

The deceased had full knowledge of the danger incident to the work he undertook and the alleged incompetency of his fellow servant, and he assumed the risk by continuing in the employment.   *Carbine* v. *Railroad*, 61 Vt. 348;  *Sanford* v. *Railroad*, 6 Rail. and Corp., L. J. 35;  *Deforest* v. *Railway Co.*, 19 Hun. 509.

The second request of the defendant should have been complied with, and a failure to so comply with it was error.   2 Best Ev. pp. 755, 756;  2 Thomp. Trials, Sec. 1734;  *Vaughan* v. *Porter*, 16 Vt. 266;  *Hazard* v. *Smith*, 21 Vt. 123;  *Buck* v. *Squires*, 23 Vt. 498;  *Donahue* v. *Ins. Co.*, 56 Vt. 374.

The servant assumes the hazard of dangers which he ought to have known as well as those which he did know.   *Malone* v. *Hawley*, 46 California, 409;  Wood Mas. and Ser. Sec. 328;  Beach Contrib. Neg., Sec. 139;  *Pingree* v. *Leyland*, 135 Mass. 398;  *Powers* v. *Railroad*, 98 N. Y. 274;  *Larson* v. *Railroad Co.*, 43 Minn. 423;  Pierce Rds. p. 379;  3 Wood's Ry. Law, 1452;  *Carbine* v. *Railway Co.*, 61 Vt. 348.

*George E. Lawrence*, for the plaintiff.

Negligence is a mixed question of law and fact which ought always to be submitted to the jury.   *Taylor* v. *Day*, 16 Vt. 566;

Latremouille *v.* Bennington & Rutland Ry. Co.

*Barber* v. *Essex*, 27 Vt. 62 ; *Vinton* v. *Schwab*, 32 Vt. 612 ; *Hill* v. *New Haven*, 37 Vt. 501 ; *Rogers* v. *Swanton*, 54 Vt. 585 ; *Fassett* v. *Roxbury*, 55 Vt. 552 ; Beach Cont. Neg. 451 *et seq.* ; Sher. & Redf. Neg., Sec. 54 and cases there cited ; *Richmond and D. Ry.* v. *Moore*, 15 A. E. Ry. Ca. 239.

The failure of the company to provide suitable rules, if standing alone, ought to have gone to the jury. *Reagan* v. *Ry. Co.*, 93 Mo. 348 ; 5 A. and E. Ry. Ca. p. 527, note and cases cited ; *Abel* v. *D. and H. Ry.* 103 N. Y. 581.

Whether the deceased was guilty of contributory negligence was also for the jury. *Hill* v. *New Haven*, and other Vermont cases above cited.; Sher. & Red. Neg., Sec. 114, and cases cited; Beach Cont. Neg., Sec. 163, and cases cited; Pierce Rds., p. 317, and cases cited; *Detroit, etc. Ry.* v. *Van Steinburg*, 17 Mich. 99 ; *Wheelock* v. *B. and A. Ry.*, 105 Mass. 203 ; *Gaynor* v. *O. C. and N. Ry. Co.* 100 Mass. 208 ; *Wilson* v. *S. P. R. R. Co.* ; 7 A. E. Ry. Ca. 400 ; *Lesan* v. *Maine Cent. Ry.*, 23 A. E. Ry. Ca. 249 ; *Whitsett* v. *Chicago, etc. Ry.*, 22 A. E. Ry. Ca. 342 ; *Stackus* v. *N. Y. Cent. Ry.* 79 N. Y. 464 ; *Mo. Pac. Co.* v. *McCally*, 38 A. E. Ry. Ca. 162 ; *Horr* v. *N. Y. Cent. Ry.*, 38 A. E. Ry. Ca. 162 ; *Heney* v. *S. C. and P. R. Ry.*, 21 A. E. Ry. Ca. 644 ; *Moses* v. *No. Pac.*, 17 A. E. Ry. Ca. 620 ; *Lawless* v. *Conn. River Ry. Co.*, 136 Mass. 1 ; *Hart* v. *Bridge Co.* 80 N. Y. 622 ; *Luebke* v. *Chicago, etc. Ry.* 15 A. E. Ry. Ca. 183 ; *Fox* v. *H. and St. Jo. Ry.*, 15 A. E. Ry. Ca. 325 ; *Moon* v. *R. and A. Ry. Co.*, 17 A. E. Ry. Ca. 535 ; *Baldwin* v. *Ry. Co.*, 15 A. E. Ry. Ca. 166 ; *Texas and Pacific Ry. Co.* v. *Kane*, 15 A. E. Ry. Ca. 219 ; *Burk* v. *Ry. Co.*, 38 A. E. Ry. Ca. 152 ; *Anderson* v. *Ry. Co.*, 38 A. E. Ry. Ca. 206 ; *Flynn* v. *Ry. Co.*, 18 A. E. Ry. Ca. 23 ; *Duffield* v. *Ry. Co.*, 18 A. E. Ry. Ca. 35 ; *Griffin* v. *B. and A. Ry. Co.* 148 Mass. 143.

A servant assumes no risk caused by the master's breach of duty. *Noyes* v. *Smith*, 28 Vt. 59 ; *Gutrie* v. *L. and N. Ry.*

*Co.*, 15 A. E. Ry. Ca. 209; *Moon* v. *Richmond, etc. Ry. Co.*, 17 A. E. Ry. Ca. 531; *Cone* v. *Ry. Co.* 81 N. Y. 207; 2 A. E. Ry. Ca. 57; *Cowles* v. *Richmond, etc. Ry. Co.*, 2 A. E. Ry. Ca. 90; *Gilman* v. *Ry.*, 10 Allen, 233.

It is not enough that the servant had means· of knowledge. Actual knowledge must be shown. The master and servant are not upon the same plane. *Ford* v. *Fitchburgh Rd.*, 110 Mass., 240; *Gutrie* v. *N. and L. Ry.*, 2 Lea. 372; 15 A. E. Ry. Ca. 209; *Hough* v. *Ry. Co.*, 100 U. S. 213.

It is the master's duty to make things fit and suitable for the use of the servant, and the servant may assume that this has been done. *Patterson* v. *Ry. Co.*, 76 Pa. St. 393; *Hawley* v. *Ry. Co.*, 82 N. Y. 370; *Laning* v. *N. Y. C. Rd. Co.*, 49 N. Y. 521; *Flynn* v. *Kansas, etc.* Ry., 78 Mo. 195; 18 A. E. Ry. Ca. 23; *Holmes* v. *Clark*, 7 H. & N., 948; *Greene* v. *Minneapolis, etc.* Ry., 15 A. E. Ry. Ca. 214; *Kane* v. *Texas, etc.* Ry., 15 A. E. Ry. Ca. 218; *Jones* v *East Tenn. etc.* Ry., 128 U. S. 443; *Dunlap* v. *N. E. Ry. Co.*, 130 U. S. 649; *Huddlestone* v. *Machine Shop*, 106 Mass. 282.

The defendant's second request was not an element in the case, and the court rightly disregarded it.

*Bradley* v. *Andrews*, 51 Vt. 530; *Manning* v. *Burlington, etc.* Ry. Co., 15 A. E. Ry. Ca. 171.

The opinion of the court was delivered by

ROSS, C. J. This is an action to recover damages, suffered by the widow and next kin of Solomon Latremouille resulting from his death, claimed to have been caused by the neglect of the defendant, in whose employ he was at the time of the accident causing his death. The neglect complained of was that it did not furnish the deceased a safe place to work, and did not employ and furnish competent and sufficient fellow servants to assist him in that work. At the time of his death, the deceased was, and had been, a car inspector and repairer for the defendant

Latremouille *v.* Bennington & Rutland Ry. Co.

in and about the railroad yard at Rutland, for fourteen or fifteen years. This yard was occupied by three Railroad Companies: the defendant, the Central Vermont Co., and the Deleware and Hudson Canal Co. Each company had tracks in the yard, which it controlled and generally occupied. They all ran trains into, and made up trains in the yard. The Central Vermont Company controlled, and did the switching of cars from one track to another, for the entire yard, the other companies contributing towards that expense. Each company employed one or more car inspector, and repairer. The duty of the deceased in such employment, was to inspect all cars coming into the yard and destined to go over the defendant's railroad, and to mark for repairs such cars as did not comply with the Master Car Builder's Rules, by which all railroad companies are governed. He was furnished with a set of these rules. He was to superintend and see to the repairs of all cars marked by him, or by any of the other car inspectors and repairers in that yard, which it was the duty of the defendant to repair. If the needed repair was such as could be properly made where the car was standing, or on the defendant's track, he made it. If it was not of that character, he marked the car to be taken to the shop to have the repair made. Cars marked to be taken to the shop for repairs, or to the defendant's track, were taken there by the switching force. He exercised his own discretion and judgment in marking cars with reference to whether they were to be taken to the defendant's shops, or track, to be repaired, or whether the repair needed was of such a character that he could properly and safely make it on the track where the car was standing. The defendant had a track, upon which he could order a car needing repairs, placed, where the repairs could be made by himself. This track was only open at one end, and was used to store cars. No trains ran over it. On the day of the accident, a car belonging to the defendant to repair, standing on the track of the Central Vt. R. R. Co. and destined over the railroad of the Delaware & Hudson C. Co., was

marked by the inspector of the latter company as needing repair, because of a defective draw-bar. There was at least one car north of the car needing repair, and the defective draw-bar was at the south end of the car. There were one or more cars standing on the track south of this car, so that a train coming from the south, could not draw through the yard on this track. The Central Vt. R. R. Co. had another track, on which trains coming from the south generally could pass through the yard, but on the day of the accident it was being repaired and could not be used. Trains could be set upon the track where this car stood, from either end. A train coming over the Central Vermont Railroad from the south could draw up through the station, and back down from the north on this track. If deceased determined to make the repair needed himself, he could do it where the car stood, or order the car placed upon the track of the defendant. If the required repair was such that the deceased needed a helper, either to watch for a coming or moving train, or to assist him, he called upon the foreman of the carpenter shop, and he sent him the help asked for. The deceased undertook to repair this car having the defective draw-bar while standing on the track of the Central Vt. R. R. Co. He procured the things necessary and called upon the foreman of the carpenter shop for a helper. The foreman sent to help him a man by the name of Sullivan, who had, in one capacity or another, worked in the yard with the deceased about twenty years. So far as appears the deceased made no call for any more or different help, nor did he object to Sullivan as a helper. The deceased, with Sullivan as a helper, started from the carpenter shop to go and make repairs on this car. Some of the witnesses saw them on their way to the car. The only witness who describes how the accident happened, is Sullivan. He says that he and deceased went to the south end of this car, standing on the track of the Central Vt. R. R. Co., and that the deceased looked along one side of the cars, and he, the other, and neither saw anything of

Latremouille *v.* Bennington & Rutland Ry. Co.

any train or engine moving, and then the deceased directed him to take the draw-bar and hold it in place, while the deceased went under the car to put in a pin which he had had made; that to hold the draw-bar in place he stood in the centre of the track near the end of the car. It is evident that he was facing toward the north, but was so near to the car that he could not see the train backing down on the track from the north. While the deceased was under the car endeavoring to put in the pin, a train coming from the south over the Central Vt. railroad, ran up through the station and backed down, unseen and unheard, from the north upon the track where the deceased was under the car, and ran the car over him, causing the injuries from which he died. Some of the plaintiff's witnesses testify that they did not see Sullivan there when their attention was called to the fact that the deceased was under the car injured. But if Sullivan was not present, he had either been sent away by the deceased, of which there is no evidence, or voluntarily absented himself. If the latter be true, the deceased must have either gone under the car to repair it, or remained under it, without any assistant. It cannot be presumed that he did not know of Sullivan's absence, if he was absent. The defendant's uncontradicted testimony tended to show, that its master mechanic, had, only a short time before the accident, told the deceased that if he found it necessary to go under a car to make the needed repairs, he must have the switching force set it upon the track of the defendant, used for that purpose, and for storing cars, not open for the trains generally, but open only at one end, and for its own cars. The plaintiff contends that this testimony is debatable, as improbable, although uncontradicted. The foregoing is the substance of the testimony which was introduced before the jury. When the plaintiff rested, and at the close of the testimony, the defendant requested the court to direct a verdict to be returned in its favor. It excepted to the refusal of the court to direct a verdict on either motion. The first motion and exception were waived, by

proceeding with the trial after the ruling of the court. If it would have availed itself of this refusal, the defendant should also have rested. Hence we have to consider only the exception taken to the refusal of the court at the close of the evidence. On this contention the parties do not substantially differ in respect to the law governing the subject. Such a motion is like a demurrer to the whole evidence, on the ground of its insufficiency to warrant a verdict for the plaintiff if one should be found. The motion could not be entertained, if, as the case stood, there was any evidence tending fairly and reasonably to support the claim of the plaintiff. If the verdict was to be determined by an inference, to be made by the jury from facts, any of which was more or less in dispute, the disputed fact, or facts, were to be determined, and the inference made by the jury. So long as any fact from which such inference is to be made, is in doubt or dispute, the inference is dependent, partly upon the fact to be determined by the jury. It is not wholly a question of law. It only becomes a question of law purely, when conceding the facts to be undisputed, or to be such as the testimony most favorable to the plaintiff has any reasonable tendency to establish, they will not warrant a legal inference, nor if the inference be of a fact have a reasonable tendency to support such inference of fact, necessary to give the plaintiff a verdict. As said by Collamer, J., in *Lindsay* v. *Lindsay*, 11 Vt. 621. "If there be any conflict in the evidence, or if it only shows facts from which the main fact is to be *presumed or inferred by the jury*, the case should be left to the jury, under proper legal instructions." *Wilder* v. *Wheeldon*, 56 Vt. 345 ; *Noyes & Smalley* v. *Rockwood & Spooner*, id. 647 ; *St. Johnsbury* v. *Thompson*, 59 Vt. 300.

The plaintiff contends that this is a question of negligence, and that negligence is a fact inferable, or determinable from all the facts and circumstances of the case ; a mixed question of law and fact, always, under the decisions of this state, to be

Latremouille v. Bennington & Rutland Ry. Co.

submitted to the jury under proper instructions from the court. Such manifestly is the general result of the decisions of this court. *Taylor* v. *Day*, 16 Vt. 566; *Barber* v. *Essex*, 27 Vt. 62; *Vinton* v. *Schwab*, 32 Vt. 612; *Hill* v. *New Haven*, 37 Vt. 501; *Rogers* v. *Swanton*, 54 Vt. 585; *Fassett* v. *Roxbury* 55 Vt. 552. Only under peculiar circumstances has the question of negligence been withdrawn from the jury. *Abbott* v. *Wolcott*, 38 Vt. 666; *Briggs* v. *Taylor*, 28 Vt. 180. But the defendant contends that the view of the testimony most favorable to the plaintiff, has no tendency to show negligence on its part. While it admits that it is the duty of the employer to furnish the employe a reasonably safe place, safe machinery and tools to work in and with, and a suitable number of reasonably skillful, careful and prudent fellow servants, and that negligence arises only when the employer comes short in the dischage of his duty in some one of these particulars, it says truly that it is also an established rule of law governing such contracts and the liability and duty of the employer, arising impliedly from the contract, that the employe assumes the known and obvious dangers attendant upon his entering, and continuing in the employment; that this includes the known and obvious dangers which are likely to arise from the imperfections of the place or machinery, or the known want of, or unskillfulness and carelessness of fellow servants. It claims that under these well established rules of law, the view of the evidence most favorable to the plaintiff does not have a tendency to show that the deceased was injured by a danger which was not as well if not better known and obvious to the deceased, after his long employment in and acquaintance with the place, and all its attendant dangers and perils, including those, if any, arising from having Sullivan alone assigned to him as a helper, than it could have been to the defendant. Hence the evidence did not tend to show negligence, and therefore it was the duty of the trial court to have directed a verdict for the defendant. The rule of law contended for by the defendant is well

established. *Carbine* v. *Bennington and Rutland R. R. Co.*, 61 Vt. 348. Also the many authorities cited in the briefs; and those collected in note to *Buzzell* v. *Laconia Manufacturing Co.* 48 Me. 113, (77 Am. Dec. 218); *Warren* v. *Fitchburgh R R. Co.* 8 Allen 227. ( 85 Am. Dec. 700 and note); *Todd* v. *Old Colony R. R. Co.* 83 Am. Dec. 679 and note; Pierce on R. R. 317; *Metro. R. R. Co.* v. *Jackson,* 3 App. C. 197, (House of Lords); *Williams* v. *Del. Lack. and W. R. R. Co.* 39 Hun. 430; Sher. & Red. Neg. secs. 54, 216, 217; *Detroit and Mil. R. R. Co.* v. *Van Steinburg,* 17 Mich. 99. The deceased had been employed in the same capacity in the yard for many years. He was left to determine, in his own judgment, when and how he would make any needed repair in the yard. If he determined that it was not safe to make it there he could direct the car removed to the shops or the defendant's track used for that purpose. It was then the duty of the switching force, over whom the defendant had no control, to place it there. He was alone to determine the help he needed to make the required repair, both in number and capacity, and call for them. From his independent position in the service, and his long acquaintance with the tracks in the yard, how they were used, the number of trains going and coming, or likely to go or come, and the condition of the tracks on that day; from his knowledge of the kind of repair which the car required and the help he should need, either to keep watch or assist in making the repair; from his knowledge of how the switching engine was then or likely to be employed; and from his long acquaintance with Sullivan, his skill, care, and capacity, it cannot be that the deceased did not know, as well or better than the defendant, or any of its representatives, just what danger he exposed himself to, by going under the car to make the repair, either with Sullivan holding the drawbar, under his direction, as testified to by Sullivan, or with Sullivan absent with or without his consent. Hence the danger to which the deceased exposed himself, was known and obvious, within the meaning of

Latremouille *v.* Bennington & Rutland Ry. Co.

the decisions, on the most favorable view of the testimony, omitting entirely from consideration the testimony tending to show that he had been directed not to make any repairs in the yard, which required him to go under the car. We think the court ought to have entertained the defendant's motion, and directed a verdict in its favor.

2.   On the trial against the defendant's exception, the plaintiff was permitted to inquire of several witnesses whether Sullivan, who was sent as a helper, was bright or otherwise, intelligent, etc. The witnesses had known him and seen him work.   When it became necessary to inquire in regard to the skill or capacity of a person in any given direction, the inquiries should be so framed as to direct the witness' attention to the precise point desired. Whether Sullivan was as bright or intelligent as ordinary men, or whether he sometimes hesitated when attempting to speak, could not be helpful to the jury, to determine whether he was a competent helper for the deceased in making the required repair. He might not be bright, or witty, or intelligent, on the current topics of the day, and yet be skillful with tools, obedient to orders, active and careful in doing what he was told to do. We think the inquiries were too general. They assume that unless he was bright, intelligent, and a ready, fluent speaker, he was incompetent as a helper, and it was negligence for the defendant to send him as such. Capacity is many-sided. Frequently a very bright, intelligent person, and a ready, fluent speaker, would be a very incompetent, improper person to send to help a mechanic repair a broken car, when his helpfulness depends mainly upon his knowledge of tools and skill in using them, upon his activity, his comprehension of and obedience to the orders of his superior. The inquiries should have been directed to show what Sullivan's duties were as such helper, and his capacity, as known to the witnesses, from seeing him perform the same kind and class of duties, or those requiring like skill and capacity. If a person's character for truth and veracity is required, it does not help to inquire

whether he is a good mathmetician, logician, or a good chopper of wood, and *vice versa. Corson* v. *Me. Cent. R. R. Co.,* 76 Me. 244.

3. We think the court should have complied with the defendant's second request. The soundness of the law therein embodied, is conceded. The court puts its failure to comply with it, on the ground that the plaintiff did not claim to the contrary. While the plaintiff did not so claim, the jury uninstructed, might think that a presumption of negligence arose from the fact that the deceased was injured while in the employ of the defendant. The request was a proper one and should have been complied with.

4. The deceased entering and continuing in the defendant's service as car inspector and repairer, impliedly agreed to exercise ordinary observation, and reasonable skill and diligence therein, to ascertain and avoid the dangers attendant upon the discharge of his duties. In other words, he assumed the risk of all such dangers as should be known by him by the exercise of such observation, care, skill and diligence. In substance the defendant's seventh and eighth requests, called upon the court to instruct the jury that the deceased, in addition to dangers actually known by him, assumed the risk of such as he might have known by the exercise of ordinary observation or reasonable skill and diligence in his department of service. In its charge the court only held him to assume such dangers as he knew existed. The court said, in answer to these requests: "If the deceased knew the danger to which he would be exposed in the work under the car standing upon the track in the yard, and knew that a train might come along and run into the car, and he had charge of the work, and he entered voluntarily upon the work without a watcher or assistant, or sent the watcher or assistant that he had elsewhere, or put him at work elsewhere, and he continued to work at the repairs under the car alone, did so voluntarily, without direction of his superior, he would assume the known and obvious dangers of such employment." The word obvious, as here used,

coupled as it is, in the first part of this portion of the charge with actual knowledge, is not a fair or reasonable compliance with the requests so far as they embody the danger which the deceased ought to have known. We think these requests ought to have been complied with in substance and were not; that the word obvious as used added little if anything to the dangers assumed as actually known.

*Anderson* v. *Minn. & N. W. R. R. Co.* 39 Minn. 523, (38 Am. & E. Ry. Ca. 209.)

5. The charge of the court makes the defendant liable for any injury received by the deceased from the incompetency of Sullivan, although the deceased knew of his incompetency, which caused the injury, and received him as helper without objection. It is well established that an employe assumes all dangers from the known incompetency or unskillfulness of a fellow servant, of which he does not complain or make known to his employer. 17 Am. & E. R. R. Cases, 638 Note; 38 Pa. St. 104; 49 N. Y. 521; 33 Ohio St. 468; 8 Fed. Rep. 544. We think there was error in this portion of the charge in this respect. For these errors the judgment is reversed. While we hold that it was the duty of the court to have entertained the defendant's motion to direct a verdict and enter judgment in its favor; and while generally it is the duty of this court to enter such judgment as the trial court should have done, yet, if the trial court had sustained the defendant's motion, the plaintiff might have desired, and been permitted to introduce further evidence, and she may desire to do so on another trial, hence, the cause is *remanded for new trial.*