EDWARD L. WILDER *v.* BENJ. F. WHEELDON.

*Deed, Construction of. Right of Way. Adverse Possession. Merger of Servitude. Evidence.*

H. in 1848 owned both the plaintiff's and defendant's premises. The deed conveying the plaintiff's contained this clause : " *Said sixteen feet [east] of said house to be kept open as far back as the south end of said house.*" The defendant claimed a right of way by reason of said reservation, and also by prescription. *Held,*

1. That a right of way was not reserved; that the clause is applicable to other matters, such as obstructing light, air, or the view.

Wilder *v.* Wheeldon.

2. MERGER OF SERVITUDE. Evidence was not admissible to aid in the construction of the deed, showing that the way had been used for twenty years prior to 1848; because (*a*) if there was a servitude, it had been merged in a unity of ownership; and (*b*) there was no ambiguity in the deed.

3. Copies of deeds of the premises executed prior to the time when H. acquired title, were not admissible, to prove that the plaintiff's east line was only eight feet east of his dwelling house, to aid in construction of the deed.

4. ADVERSE POSSESSION. The use must be under a claim of right; thus, one of the defendant's granters admitted on trial, that while he occupied he never made any claim to the land. *Held*, that the possession was not adverse.

TRESPASS *quare clausum.* Plea, general issue with notice. Trial by jury, May term, 1883, TAFT, J., presiding. Verdict ordered for the plaintiff. The defendant, offered on trial, and the court excluded, evidence tending to show, that prior to Heald's obtaining title to the Haven store premises and the plaintiff's premises, said 16 feet easterly of plaintiff's house had for more than 20 years been used by the owners of the Haven store premises for a way to ·get to and from the back part of said store lot, going from Main street to Depot street, or from Depot street around to Main street; and this evidence was offered as tending to show the construction that should be given to the deed from Heald to Adams, and what the parties intended. For a like purpose, the defendant offered to show by duly certified copies of deeds of said premises given prior to the time said Heald acquired title to both premises, that at the time Heald acquired title the East line of the plaintiff's premises was only eight feet east of the dwelling house of the plaintiff; which was also excluded.

Testimony of S. W. Stimson, referred to in the opinion, as shown by the stenographer's minutes, in part:

"Q. What claim, if any, did you assert, or claim that you had on Mr. Willard's land at that time ? (Objected to by Mr. Johnson. He may state any conversation that he had.)

Court. I think that during the time that he was the owner, that he may testify as to whether he made any agreement or not to the use or occupancy of this adjoining land over on the opposite side of the line.

Mr. Johnson. Does the Court mean whether he stated to the owner of the other?

Court. Whether he made any claim in any way, whether he stated it to the party or not. (Exception by the defendant).

A. I never claimed that I had any.

Q. Was there during the time of your ownership and occupancy a question raised as to where the dividing line between your lands was? (Objected to).

Court. Ask what was said upon the subject.

A. I don't know as I can answer that exactly in that shape I wished to find out where my west line was exactly, and got a surveyor and had it surveyed out; tried to find out where it was.

Q. Do you remember what the occasion of your wishing to find out where it was, was?

A. There was a little trouble about the tenants in each house, in Mr. Wilder's house and in mine, about hanging clothes on their premises; and I thought I would find out where I did own, and I got it surveyed out.

Q. And in determining where your line was, what did you claim to be your west line? (Objected to).

Q. What did you do with reference to having your line surveyed?

A. I answered that once; I said I got a surveyor on there.

Q. What did you direct the surveyor to do?

A. I directed him to find out where my west line was.

Q. Who did you employ to make that survey?

A. William H. Walker, your own self.

The other facts are sufficiently stated in the opinion.

*W. W. Stickney* and *William E. Johnson*, for the defendant.

What was the intent of Heald by using the words in the deed, "*to be kept open*," etc.? The words are ambiguous; and and clearly we may resort to the circumstances existing before and at the time of the conveyance, and also to the subsequent acts of the parties to get at the meaning of the words. *Giddings* v. *Mason*, 4 Vt. 308; *Putnam* v. *Smith*, 4 Vt. 622; *Lawrence* v. *Dole*, 11 Vt. 549; *Gray* v. *Clark*, 11 Vt. 583; *Wheelock* v. *Moulton*, 15 Vt. 519; *Hart* v. *Hammet*, 18 Vt. 127; *Noyes* v. *Canfield*, 27 Vt. 79; *Tracy* v. *Atherton*, 35 Vt. 54; *Homes* v. *Homes*, 36 Vt. 525; *Walker* v. *Pierce*, 38

Vt. 94; *Magoon* v. *Harris,* 46 Vt. 264; *Hoisington* v. *Grimshaw,* 48 Vt. 516. It cannot be presumed that said Heald intended to keep the control of "said 16 feet" so far as to say how long it should be kept open after he sold the store lot to Mason & Whitcomb, now defendant's premises. Such presumption would be absurd. *Railroad* v. *Hill,* 23 Vt. 681. If a right of way was reserved, as we insist, then that passed by the deed from Heald to Mason & Whitcomb, and so by successive conveyances to the defendant. *Railroad* v. *Hill, supra;* *Harwood* v. *Benton,* 32 Vt. 732; *Perrin* v. *Garfield,* 37 Vt. 304; *Fuller* v. *Arms,* 45 Vt. 400. The possession will be adverse if had and continued under claim of title, however groundless the supposed title may prove to be. 2 Wat. Tres. 6; *Bryan* v. *Atwater,* 5 Day, 189; *French* v. *Pearce,* 8 Conn. 443. There was error in directing a verdict. *Lewis* v. *Pratt,* 48 Vt. 358; *Knapp* v. *Winchester,* 11 Vt. 351. The jury would be warranted in inferring from such user a claim of right. Godd. Ease. p. 184; *Blake* v. *Everett,* 1 Allen, 248; *White* v. *Chapin,* 12 Allen 516; *Putnam* v. *Bowker,* 11 Cush. 542; *Baker* v. *Crosby,* 9 Gray 421; *Hammond* v. *Zehner,* 21 N. Y. 118; Sedg. & W. Tit. s. 758.

*Walker & Goddard,* for the plaintiff.

The restriction in the deed does not constitute an easement of a right of way. *Badyer* v. *Boardman,* 16 Gray, 559; 2 Wash. R. P. 25, 33; Wash. Ease. 10, 19. In order to constitute a right of way for the benefit of the dominant estate the language must be permissive, granting the dominant estate a right to pass over the estate. Prohibitive or restrictive words in a grant or reservation never are sufficient to constitute a right of way for the benefit of the dominant estate. There was no necessity for a right of way. Godd. Ease. 267, n., 10; *Wheeldon* v. *Burrows,* 18 Am. Law Reg. 646; *Bolton* v. *School Board,* 8 Reporter, 384; *Plymton* v. *Converse,* 42 Vt. 712; *Smith* v. *Higbee,* 12 Vt. 113; 4 Gray, 155; 107 Mass. 591; 10 Gray, 67 *Gazetty* v. *Bethmer,* 14 Mass. 55. The right of way, if any existed, was extinguished by unity

of ownership in Heald.  3 Kent Com. 423; *Walley* v. *Thomp-son*, 1 Bos. & Pul. 371; *Clements* v. *Lambert*, 1 Taunt. 2 05; Wash. Ease. 639.  There was no ambiguity in the deed; and parol evidence is not admissible as to the situation and surroundings before and at the time of the execution of the deed to show the intention of the parties.  1 Bouv. Law Dict. 97; 2 Ib. 7; *Pingry* v. *Watkins*, 17 Vt. 379; *Hakes* v. *Hotchkiss*, 23 Vt. 331; *Morse* v. *Low*, 44 Vt. 561; *Abbott* v. *Choate*, 47 Vt. 53; *Myers* v. *Dunn*, 15 Reporter, 45.  There was no error in the ruling of the court as to the admission of the evidence, adverse possession, etc.  Whash. Ease. (3d. ed.), pp. 70, 86, 162, 163; 17 Wend. 564; 9 Pick. 255; 24 Pick. 106; 36 Vt. 514; 44 Vt. 158; 10 Allen, 560.

The opinion of the court was delivered by

VEAZEY, J.  The plaintiff and defendant were each owners and in possession of adjoining premises in Ludlow village.  The plaintiff's premises consist of a small lot of land and a dwelling, with a shop in the rear.  The defendant's premises consist of a lot of land with a store building thereon.  Both front upon Main street.  The plaintiff's land extends sixteen feet easterly of his dwelling, and the defendant's west line is the easterly line of the plaintiff's land.  The defendant claims a right of way over all the plaintiff's land east of his dwelling, sixteen feet in width, to the rear of plaintiff's lot.  The controversy in this suit is as to such claimed right of way for the purpose of going to and from the west side and rear part of the defendant's store building.  March 25, 1848, and prior thereto the plaintiff's premises and the defendant's, and the lot adjoining and easterly of the defendant's, known as the Barrett Lot, were owned as one entire piece of property by Daniel A. Heald.

March 25, said Heald conveyed the plaintiff's premises to one Horace H. Adams, in which deed they are described as follows:

".Being the Boynton shop so called and bounded west by the Spear lot, north by the highway leading from Jacob Patrick's blacksmith shop to Reuben Washburn's office, east sixteen feet

from the northeast corner of the house standing on said premises by the store lot known as the Haven and Fletcher store in a line parellel with the first mentioned west line, to land of Benjamin Pettengill, and south by land of said Pettingill, and is the same premises deeded to me by John R. and Louisa H. Smith and Richard F. Fletcher. Said sixteen feet of said house to be kept open as far back as the south end of the house."

The plaintiff acquired title by deed dated May 26, 1856, and has since been the owner thereof.

April 1, 1848, Heald conveyed the defendant's premises, including the Barrett Lot, to Mason & Whitcomb. In which deed the premises are described as follows :

"Bounded west by the Boynton shop lot, so called, by a line sixteen feet east of the northeast corner of the house standing on said Boynton shop lot and running southerly in a line parallel with the west line of said Boynton shop lot to land of Benjamin Pettengill, south by land of said Pettengilll, east by the street leading on to South Hill (now called Depot street,) and north by the street leading from Jacob Patrick's blacksmith shop to R. Washburn's office, and contains about one-fourth of an acre of land, be the same more or less."

By subsequent deed the defendant's premises, including the Barrett lot, were conveyed until May 11, 1868, when the defendant acquired title to the same.

From this statement it appears that the southern or rear boundary of the plaintiff's and defendant's premises is a continuation of the same straight line.

The defendant claimed on the trial below, the right of way in question ; first, under the deeds from Heald to Adams and to Mason & Whitcomb, and subsequent conveyances ; second, by an adverse use of such way for the required period to gain a prescriptive right. The County Court decided adversely to both claims and directed a verdict for the plaintiff. To the rulings of the court the defendant excepted.

Upon the defendant's first claim he offered evidence tending to show that prior to Heald's obtaining title to the premises of both parties in 1848, said sixteen feet had for more than twenty years been used by the then owners of the defendant's premises

to go to and from the back part of this lot on which a store stood, and this was offered as tending to show the construction that should be given to the deed from Heald to Adams, and what the parties intended. The court excluded such evidence, to which the defendant excepted.

For like purpose the defendant offered to show by duly certified copies of deeds of said premises, given prior to the time Heald acquired title to both premises, that, at the time Heald acquired title, the east line of plaintiff's premises was only eight feet east of the dwelling house of the plaintiff then standing thereon. The court also refused to receive this evidence to which the defendant excepted.

I. Taking up these questions in the order stated, we think it is plain that the clause in the deed of Heald to Adams, viz.: " Said sixteen feet (east) of said house to be kept open as far back as the south end of said house," was not a reservation of a right of way. The provision or restriction is in derogation of the grant, and is not entitled to a liberal construction in favor of the grantor. The clause does not import any idea of a reserved right of way, independent of extrinsic considerations. It is a restriction of negative character applicable to other matters, such as obstructing light and air or the view. Wash. Ease. 14 ; 2 Wash. R. P. 26. The language of a reservation must be as explicit as that of a grant.

This construction is made certain by reference to the circumstances. The defendant does not limit his claim to a right of way over the plaintiff's land to the south end of the plaintiff's house, but claims it through to the end of the lot, and for the convenience of the rear end of the buildings which extend nearly to the rear of his lot. The south end of the house referred to was only about half way from front to rear of the lot. The space was but sixteen feet wide and a portion of that was taken up by an outside stairway to the second story of the plaintiff's house. It did not reach to the rear of the buildings on the adjoining premises of Heald now owned by the defendant; therefore the space afforded no convenience, as a way, to Heald.

Neither was it a necessity to him, because he had access to the rear from another street, his building standing as it did on a corner, and he also had ample room for a drive-way from Main street, in front, between the east line of the premises conveyed and the building on his adjoining corner lot on the east, the space being about eighteen feet wide.

We think the testimony offered was properly excluded. When the property became united in Heald, the right of way, if any existed, was extinguished by unity of ownership and possession. The servitude, if any, was merged. Wash. Ease. 639 ; 3 Kent Com. 423 ; *Plimpton* v. *Converse,* 42 Vt. 712.

Moreover there was no such ambiguity in said restrictive clause as to warrant the introduction of the evidence offered for the purpose offered. If there is any doubt as to what the restriction applied, we have none that it should not be construed as an affirmative reservation of a right of way. The parties to the deed made it definite to that extent by the language used. It is true the evidence offered was documentary, but it was extrinsic. The documents were not contemporaneous or between the parties to the deed in question. To have admitted them would have violated the principle, if not the letter, of the rule that excludes parol evidence to vary a written instrument.

As Heald reserved no right of way when he conveyed to Adams, he had none to convey when, six days afterwards, he made the conveyance of the corner premises to Mason and Whitcomb, and in that deed he did not purport to convey any right of way. No mention of it was made, but he described the western boundary, as the east line of the now plaintiff's premises. As Heald had no right of way to convey when he made the deed to Mason and Whitcomb, it is unimportant in this case to consider whether his deed to them would not have carried a right of way by implication as an appurtenant of the premises conveyed, provided he had had one to convey,

II. Did the defendant's evidence tend to show that he and his grantors had acquired a right of way by prescription ?

The plaintiff showed record title in himself. The burden was

on the defendant to overcome this title. The exceptions state that the defendant's evidence tended to show that his grantors from 1848 to 1868, when the defendant came in, were accustomed to use the way in question from front to rear of his premises, in an open and notorious manner. If the statement in the exceptions stopped there, we think the evidence would have been sufficient to entitle the defendant to go to the jury on this question, without showing that such uses of the way expressly declared that they used it under a claim of right. The use of an easement may be of such character as to create the presumption and warrant the conclusion that it was being used under a claim of right. A declaration of claim is legal evidence of the fact of claim; but here as elsewhere acts often speak louder than words. *Arbuckle* v. *Ward*, 29 Vt. 43; *Dodge* v. *Stacey*, 39 Vt. 558. The enjoyment or use must be under a claim of right; and the question here is simply whether the evidence tended to show the claim. We think it did. Godd. Ease. pp. 134, 316.

But the exceptions go further and state exactly what the claim was in connection with the use, from October, 1859, to the fall of 1866. During this time one Stimson occupied the defendant's premises, and owned them all this time except the last year; and he testified that he used this way as he had occasion and the court put it upon him by a ruling upon a question asked, to state whether he *made any claim in any way*; whether he stated it to the other party or not. The witness replied, " I never claimed that I had any."

We think that in view of all that took place between court and counsel, as shown by the stenographer's minutes, when this reply was made, and in the light of all his testimony, he meant to be understood that he never entertained any claim of right to use the way, and never used it with the intent of claim. As a claim of right is an essential link in the chain that upholds a prescriptive right, if that is wanting the other links all go for nothing.

The exceptions also show that the testimony of Stimson was in no respect contradicted or varied.

State *v.* Mead.

His testimony, unattacked, negatived adverse use during his ownership; and it is not claimed that there was fifteen years continuous use, of such character as to gain a prescriptive right, after his ownership.

The defendant having failed to show title by deed or that he had acquired a prescriptive right, it became the duty of the County Court to direct a verdict. Under the view taken it is not necessary to pass upon the other rulings to which exception was taken.

Judgment affirmed.