## VILLAGE OF ST. JOHNSBURY v. JOHN C. THOMPSON.

*Municipal Corporation.* *Village Charter.* *General Law.* *By-Law, Reasonable.*

1. CHARTER. The charter of an incorporated village authorizing it to "regulate" its victualing-houses repeals by implication the general law authorizing the selectmen of a town to license persons to keep such houses, and confers upon the village power to license.

2. BY-LAWS. The by-laws of a municipal corporation, authorized by its charter, have the same effect within its limits as a special law of the legislature.

3. BY-LAW, REASONABLE—RESTRAINT OF TRADE. Under a charter which authorizes a village by its by-laws to "regulate" its victualing-shops; to restrain nuisances, to exercise other police powers, and to impose penalties, etc., a by-law conferring power upon the trustees of the village to license persons to keep such shops for a year or less time under such regulations as the trustees might prescribe, and providing a penalty of $10 for keeping such shops without a license is a reasonable regulation, and not contrary to common right.

4. DIRECTING VERDICT. When there is no conflict in the evidence and no dispute as to the facts, the only question is one of law, to be determined by the court; and in such case it is lawful to direct a verdict, and the verdict will be upheld if the law and the facts warrant it.

5. BY-LAW—KEEPER OF SHOP—AGENT—PLEADING. When one controls the business of keeping a victualing-shop in the name and upon the credit of his wife, but without her presence or personal attention, he is a keeper within the meaning of the by-law prohibiting a person from keeping such shop without a license; and he is liable in an action to recover a penalty imposed by the by-law.

ACTION of debt to recover a penalty. Plea, *nil debet.* Trial by jury, June Term, 1885, Ross, J., presiding. Verdict

ordered for the plaintiff for $10. The case appears in the opinion.

*Bates & May,* for the defendant.

The evidence did not warrant the court in ordering a verdict. The trustees could regulate the use of victualing-shops; but they could not prohibit the exercise of an honest, lawful trade or calling under the pretense of regulating the *use* of such shops.

It was a question of fact whether the defendant kept the shop. It cannot well be claimed, as a matter of law, that a revocation in terms of a license never granted was intended as a revocation of one that had been granted. 20 Rep. 468. It should have been submitted to the jury if there was any evidence tending to establish the defendant's claim. Proffatt Jury Trial, s. 355; *Rogers* v. *Judd,* 6 Vt. 191. The charter gave the trustees no power to demand a license.

The word " regulate " has a well known and settled meaning in a charter. 25 Ind. 283. In New York it has been held that an act to regulate public landings did not confer power to lay out and establish a new public landing. *Comm'rs* v. *Judges,* 17 Wend. 9; 11 R. I. 456; 23 Am. Rep. 503; Sedg. Stat. Law, 280. But the right to license must be conferred by charter. *Dunham* v. *Rochester,* 5 Cow. 462; *Com.* v. *Stodder,* 2 Cush. 562; *Cushing* v. *Boston,* 128 Mass. 330; s. c. 35 Am. Rep. 383; *Com.* v. *Turner,* 1 Cush. 493; *Robinson* v. *Mayor,* 34 Am. Dec. s. 629; Dill. Mun. Corp. ss. 275, 291.

One rule relating-to by-laws is that they must be consistent with charter, reasonable and beneficial, harmonious with the statutory and common law; not restraining trade. Bish. Stat. Crimes, s. 22; *Clark* v. *LeCren,* 9 B. & C. 52; *State* v. *Mott,* 61 Md. 297; s. c. 48 Am. Rep. 105; *Ward* v. *Little Rock,* 41 Ark. 526; s. c. 48 Am. Rep. 46; *Atkinson* v. *Transp. Co.* 60 Wis. 141; 50 Am. Rep. 352; *Ward* v. *Greenville,* 8 Bax. 228; s. c. 35 Am. Rep. 700, and note; *Clinton*

St. Johnsbury v. Thompson.

v. *Phillips*, 58 Ill. 102 ; s. c. 11 Am. Rep. 52, and note ; *Meyers* v. *R. R. Cos.* 42 Am. Rep. 50 ; *State* v. *Patterson*, 16 Vroom, 310 ; s. c. 46 Am. Rep. 772 ; *Long.* v. *Taxing Dist.* 7 Lea, 134.

A distinction is to be made in reference to ordinances regulating or restraining trade. *State* v. *Clark*, 28 N. H. 176 ; *Stokes* v. *N. Y.* 14 Wend. 87.

This by-law is in conflict with section 3940, Revised Laws, and subsequent sections, and therefore void. Bish. Stat. Crimes, s. 24 ; *Com.* v. *Turner*, 1 Cush. 493 ; *Burke.* v. *Bell*, 36 Me. 317 ; *Loeb* v. *Attica*, 82 Ind. 175 ; s. c. 42 Am. Rep. 494 ; s. c. 45 Am. Rep. 134 ; *Kneedler* v. *Norristown*, 100 Penn. St. 368 ; s. c. 45 Am. Rep. 383 ; Dill. Mun. Corp. s. 298.

Sections 3940 and 3947 were later enactments (1880) than the village charter (1852). *Bennington* v. *Smith*, 29 Vt. 254.

Chapter 133, R. L., does not give greater powers to trustees, as to enactments of by-laws, than did the original charter. Section 2786 names all the subjects as to which the villages may enact by-laws. It enacts that the by-laws, etc., must not be inconsistent with law. Sedg. Stat. Law, 400.

*Ide & Stafford*, for the plaintiff.

The power of the plaintiff to pass such by-laws as the one upon which this action is based, is clearly given by sections 2786 and 2787 of Revised Laws, as well as by section 7 of the village charter. Such a by-law is not unreasonable or unconstitutional. *Commonwealth* v. *Worcester*, 3 Pick. 462 ; Vandine's Case, 6 Pick. 187 ; Nightingale's Case, 11 Pick. 168 ; *Bush.* v. *Seabury*, 8 Johns. 418.

The validity of the by-law depends upon the question, whether it contemplates the exercise of any power beyond the power of regulation. It imposes no tax. It demands no license fee. It merely provides that the recording of the license shall be " at the expense " of the licensee. This license was granted upon condition that no beer should be sold in said shop. This

condition, which was imposed in the proper exercise of the power of regulation, having been violated, the license was revoked in the justifiable exercise of the same power.

The defendant was clearly liable under the language of the by-law. He was the person who "kept the grocery." He cannot screen himself from liability by showing that he acted as his wife's agent. *Commonwealth* v. *Rice*, 9 Met. 253.

Under the Massachusetts statute prohibiting the keeping or maintaining a tenement for the illegal sale of intoxicating liquor, it has been uniformly held that a mere clerk or agent selling liquor might be convicted. *Commonwealth* v. *Kimball*, 105 Mass. 465; *Commonwealth* v. *Burke*, 114 Mass. 261; *Commonwealth* v. *Dowling*, 114 Mass. 259; Tryon's Case, 99 Mass. 442; see *Commonwealth* v. *Drew*, 3 Cush. 279.

The opinion of the court was delivered by

WALKER, J. This is an action of debt to recover a penalty of ten dollars, imposed by a by-law of the village of St. Johnsbury, for keeping a victualing-shop in that village without a license from the trustees. The County Court directed a verdict upon the evidence for the plaintiff, for ten dollars and costs.

No question is made as to the organization of the village under the charter, nor as to the adoption of the by-law upon which the action is founded; but it is contended by the defendant that the by-law is invalid: 1st. Because it is in conflict with the general law of the State, and, as he insists, not authorized by the village charter; 2d. Because the by-law is in restraint of trade, and unreasonable and contrary to common right. The defendant also insists that the County Court was not warranted upon the evidence in directing a verdict for the plaintiff.

Taking up these objections in the order stated, the first question for consideration is, the validity of the by-law.

I. The general law of the State since 1850 has authorized the selectmen of towns to license for one year or less time suitable persons to keep victualing-houses or shops in their re-

spective towns, and to sell therein provisions and fruits; and has clothed the selectmen with power to annul or vacate such licenses whenever in their opinion the public good requires it. The same statute law provides that any person keeping a victualing-house or shop, and selling therein provisions or fruits without a license, shall forfeit to the town, where such offense is committed, ten dollars. Comp. Stat. chap. 87, ss. 1, 7; Gen. Statutes, chap. 95, ss. 1, 8; R. L. ss. 3940 and 3947.

With this law in force, the village of St. Johnsbury was incorporated by an act of the legislature, approved November 23, 1852, and given power by its "by-laws to *regulate*  *  * the construction, location and use of hay-scales, markets, slaughter-houses, groceries, victualing-shops and the erection of dwelling-houses and other buildings, so as best to provide for the safety of the village; to restrain nuisances," and to exercise other police powers therein stated; and given power to impose any fine not exceeding twenty-five dollars for the breach of any such by-law, to be recovered for the use of the corporation in an action of debt, etc.   Sec. 7, Act of Incorporation.

Under this charter the village adopted by-law No. 3, authorizing its trustees to license for one year or less time any person to keep a grocery or victualing-shop, under such regulations as they may prescribe, within the limits of the village, to sell therein all kinds of provisions and fruits; and provided therein that, "If any person, without a license therefor, as provided in this article, shall hereafter keep any grocery or victualing-shop within the limits of the village, and shall sell therein or furnish any victuals or fruit, he shall forfeit and pay as a penalty to the corporation the sum of ten dollars and costs for each offense, to be recovered in action of debt in the name of the corporation."

The general law and the by-law are alike in all their essential features. They require the same license and impose the same penalty. They cannot both stand together, for they give two municipal bodies conflicting powers over the same subject

St. Johnsbury v. Thompson.

in the same territory. One must give way to the other. The by-laws of a municipal corporation, when authorized by the charter, have the same effect within its limits, and with respect to persons upon whom they lawfully operate, that an act of the legislature has upon the people at large. 1 Dill. Mun. Corp. s. 308, and cases therein cited. So if the by-law is authorized by the charter, it has the effect of a special law of the legislature within the limits of the village, and supersedes the general law upon the subject of victualing-houses therein; for the charter giving the village power to pass the by-law inconsistent with and repugnant to the general law, by necessary implication, operated to repeal the general law within the territorial limits of the village, on the principle that provisions of different statutes which are in conflict with each other can not stand together; and, in the absence of anything showing a different intent on the part of the legislature, general legislation upon a particular subject must give way to later inconsistent special legislation on the same subject. 1 Dill. Mun. Corp. s. 88; 4 Kent Com. 466, note; *In re Snell*, 58 Vt. 207; *State* v. *Morristown*, 33 N. J. L. (4 Vroom) 57; *State* v. *Clarke*, 25 N. J. L. (1 Dutcher) 54; *Daviess* v. *Fairbairn*, 3 How. 636; *In re Goddard*, 16 Pick. 504; *State* v. *Clarke*, 54 Mo. 17; *Mark* v. *The State*, 97 N. Y. 572.

It follows that the validity of the by-law depends upon the power of the village under its charter to pass it, and upon whether it is a reasonable regulation of the business of victualing-houses, and not contrary to common right.

It is an undisputed proposition of law that a municipal corporation possesses and can exercise under its charter not only powers granted in *express* words, but also such powers as are necessarily and fairly *implied in* or are *incident* to the powers expressly granted, and such as are *essential* to the declared objects and purposes of the corporation. 1 Dill. Mun. Corp. s. 89.

The language of the charter relating to victualing houses is: "Said corporation may by by-laws *regulate* * * * the construction, location and use of victualing-shops."

The legislature, by the language used, undertook to delegate to the village the general police power of the State over the construction, location and use of victualing-shops, as well as markets and slaughter-houses, etc. There is no language used in the act showing any intent on the part of the legislature to restrict the power given, nor to make it subject to the general law then in force in regard to the subjects named in the charter. By the charter, the subject-matter of the construction, location and use of victualing-shops, within the limits of the village, is left to the legislation of the village government. It throws upon the village authorities the responsibility of deciding what legislation in respect thereto will best promote the good order of the community and the safety, health and comfort of its inhabitants; and to that end it is competent for the village to enact all reasonable and needful by-laws. The intent of the act was to give the village greater power and control over victualing-shops than is given by the general law to selectmen of towns. The village part of St. Johnsbury had grown into a large village, and had become quite thickly settled, and there was necessity for its having larger police powers over victualing-shops than is required in a sparsely settled township. And that necessity, doubtless, largely induced the legislature to pass the act incorporating the village, establishing a more comprehensive system of government and control over victualing-shops, and the other subjects mentioned in the charter, than was given to towns by the general law. It gives the village power to legislate as to the construction and location of such shops, and also as to the manner of their use and the right to use, and under what circumstances and rules that right shall be exercised. The provisions of the charter and the general law are radically inconsistent. A license granted by the selectmen would give the person holding the same the right to keep a victualing-shop of any construction and in any location in the village, and to keep it open at all hours of the day and night, unless it became a public nuisance, and thus render inoperative and ineffectual any by-law which the village government might

adopt in reference to the construction, location and use of such shops. We cannot ascribe to the legislature an intention to establish two such conflicting and hostile systems of government upon the same subject, or to leave in force provisions of law by which its later will, as expressed in the charter, may be thwarted and overthrown. Such a result would subject legislation to reproach for its uncertainty and unintelligibility.

It is urged in the argument that the word "regulate," as used in the charter, did not authorize the village to enact a by-law requiring keepers of victualing-shops to be licensed.

It is not safe to found an argument on the use of a specific word; for the language of legislative enactments is not always precise and accurate. It is not the specific word used, but the intent of the legislature, as shown by the whole enactment, that determines its meaning and the powers conferred by it. It is apparent that the word "regulate," as employed in the act, has a general signification, and applies to the right to use victualing-shops as well as to the manner of use, and implies the power of restriction and restraint. This word, as used in city charters, has been held as conferring the power to license.

The case of *State* v. *Clark*, 54 Mo. 17, relating to the *social evil* powers of the City of St. Louis, is an instructive case on the effect of a special act on a general law, and of the use and meaning of the word "regulate" in a charter. The defendant was indicted under the general criminal code of the state, which prohibited the keeping of bawdy-houses. The defendant pleaded license from the City of St. Louis to keep such a house. The city charter gave the city power to pass ordinances, not inconsistent with any law of the state, "to regulate or suppress" such houses. Under the power to *regulate,* the city regulated such houses by passing an ordinance licensing them; and such an ordinance was held to be valid notwithstanding the general law, and to have the effect to prevent the enforcement of the general law of the state on that subject within the City of St. Louis.

It is plain that the purpose of the charter was, among other

things, to give the village power to fix and determine the localities where victualing-shops may be erected ; to permit their being kept only as the public good may require ; to direct and control the mode and manner of using them ; and to prohibit their continuance whenever and wherever they become sources of danger to the good order, safety, health and comfort of the community.

It is argued that this construction may result in a total prohibition of the business. This does not necessarily follow. That a power may be abused is no test of the existence of the power. We are not to presume that the village will abuse the authority intrusted to it. It will be soon enough to deal with questions of that character when they arise. It is enough to say, for the present, that the by-law in question is fairly within the scope of the powers conferred by the charter. The regulation contemplated by it can be effected in no better way than by requiring keepers of such shops to be licensed, and by imposing a penalty upon them for keeping the same without a license.

II. It is next objected that the by-law is unreasonable and in restraint of trade.

The purpose of the ordinance is not to impose a tax or raise a revenue for municipal use, but to regulate the business of keeping victualing-shops. A police regulation relating to such shops could hardly be passed that would not have a partial operation. Every public regulation in a village or city necessarily in some sense restricts the absolute right that existed previously ; but this is not considered an injury. The individuals thus restricted, as well as others, are supposed to be benefited. It is no objection to the validity of the by-law, because it is partial to some extent, provided it is only a proper restraint and regulation of the business for the good order, health and comfort of the community, and not a general restraint.

A by-law that no meat shall be sold in the village would be bad, being a general restraint ; but a by-law that the same

shall not be sold except in a particular place is valid, not being a restraint of the right to sell, but a regulation of that right. *Buffalo* v. *Webster*, 10 Wend. 99; *Pierce* v. *Bartrum*, Cowp. 269.

In *Nightingale's Case*, 11 Pick. 168, a by-law of the city providing that no inhabitant of the city, or of any town in the vicinity thereof, shall, without the permission of the clerk of the market, be suffered to occupy any stand for the purpose of vending commodities in certain streets, which, by the law, are a part of the market, was held to be a salutary and valid police regulation, and not operating as an improper restraint of trade but a wholesome regulation of it.

In *Brooklyn* v. *Breslin*, 57 N. Y. 591, an ordinance of the city prohibiting cartmen from doing the business of a cartman without a license, was held to be not a general restraint of the business, but a proper and wholesome regulation of it, and not against common right.

Ordinances of villages and cities, that none shall engage in the business of brokers or auctioneers unless licensed, have invariably been held to be reasonable and valid regulations of the business conducted by them, though the same necessarily restrain the individual rights of the people to some extent.

We have held that the act gave the village power to pass the by-law. The wisdom and expediency of granting such power were for the legislature to decide; and we think it can not be said that the by-law is more than a proper regulation of that branch of business for the good order of the village and the health and comfort of its inhabitants, and a proper exercise of the police power delegated to the village by the leglislature, and that it is not contrary to common right nor an improper restraint of trade.

Victualing-shops, as well as markets and slaughter-houses, are fairly within the police powers of the State. These powers, as described by Judge ISAAC F. REDFIELD in *Thorpe* v. *Railroad Co.* 27 Vt. 149, extend " to the protection of the lives, limbs, health, comfort and quiet of all persons, and the

protection of all property within the State, and by which persons and property are subjected to all kinds of restraints and burdens, in order to secure the general comfort, health and prosperity of the State, of the perfect right to do which no question ever was, or upon acknowledged general principles ever can be, made, so far as natural persons are concerned."

III. It is next contended that the evidence did not warrant the County Court in directing a verdict for the plaintiff.

The writ is dated July 25, 1884, and the declaration alleges the breach of the by-law in June, 1884. The organization of the village was conceded by the defendant, and the adoption of the by-law was duly established by legitimate proof.

The evidence given on trial in the County Court tended to show that on the 9th day of February, 1884, upon the application of the defendant, a license to keep a victualing-shop was granted by the trustees of the village to C. A. Thompson, wife of the defendant, under which the defendant acted while in force; that on the 16th day of May following this license was vacated and revoked by a certificate signed by the same trustees and duly recorded; that on the same day of May notices of this revocation, signed by the same trustees, of the the following form, were served upon the defendant and his wife, C. A. Thompson, to wit: " To C. A. Thompson and John C. Thompson, of St. Johnsbury, Vt. You are hereby notified that the license granted to John C. Thompson and Mrs. C. A. Thompson, his wife, by the trustees of the village of St Johnsbury on the 9th day of February, 1884, to keep a grocery and victualing-shop, and to sell all kinds of provisions and fruits within the limits of the said village, is hereby revoked, annulled and vacated, the public good, in our opinion, requiring that said license should be vacated. Dated this 16th day of May, 1884." (Signed by the trustees.)

There was no testimony tending to show that a license was granted to the defendant and his wife, C. A. Thompson, on the 9th day of February, 1884, or on any other day, nor was there any such claim made.

St. Johnsbury *v.* Thompson.

The evidence further tended to show that after the revocation of the license of February 9th, and the service of the notices thereof as aforesaid, the defendant kept a victualing-shop in the plaintiff village between the dates of July 5th and July 25th, 1884, in the name of his wife, and was engaged in selling victuals and drink therein as the manager and superintendent thereof, upon the wife's capital, but without her presence or personal attention or direction, all the business being conducted by him in her name; and that the defendant during said period held no license granted to him by the trustees.

This evidence was undisputed, and there was no conflict whatever in the same.

On this evidence the defendant claimed the right to go to the jury. The court asked on what questions of fact they were in dispute. He replied: "On the question of whether he was a keeper of a victualing-shop, and whether there was a license," and said he did not wish to waive any other questions, but pointed out none. The court asked him to point out any testimony in the case that was in conflict on these questions. He pointed out no testimony in which he claimed there was a conflict on this or any other questions. The court thereupon ordered a verdict for the plaintiff for the penalty imposed by the by-law.

There being no conflict in the evidence nor any dispute as to the facts, there was nothing to be submitted to the jury. The only questions to be determined upon the evidence were questions of law which could be determined only by the court. With the case thus situated it was proper and lawful for the court to direct the verdict, and the verdict thus directed will be upheld if the law and the facts disclosed by the evidence warranted it, and we think it is clear that they did. *Lindsay* v. *Lindsay*, 11 Vt. 621; *Wilder* v. *Wheeldon*, 56 Vt. 344; *Noyes et al.* v. *Rockwood*, 56 Vt. 647.

The defendant had no license during the time he is charged with keeping a victualing-shop without a license; his wife's license of February 9th had been vacated on the 16th day of

May, and notice had been served upon the defendant and his wife of the vacation of the license granted on that day. No other license had been issued to them individually or jointly on that day or any other day. The fact that the notification of revocation was of a license granted to the defendant and C. A. Thompson, his wife, on the 9th day of February, 1884, does not help the defendant. He applied for and received the license, in the name of his wife, February 9th, and he knew that that license was the only license held by him or his wife, and on receiving the notice which was served upon him he was legally notified of its vacation. He knew then, in July, 1884, that the license of February 9th, 1884, was not in force, and that neither he nor his wife was protected by it. In July, 1884, he was keeping a victualing-shop in the name of his wife as her manager and superintendent, upon her capital, without her presence and personal attention, and had the control over the place and the business done there, and was selling victuals therein without a license. This constituted him the keeper of the place as a victualing-shop within the meaning and spirit of the by-law.

In misdemeanors all who participate in the offense knowingly and intentionally are principals, and may be convicted thereof, either separately or jointly. The same principle is applicable to actions for penalties for violations of municipal ordinances and by-laws, although recoverable, by force of the statute or ordinance, only by a civil action.

In *Regina* v. *Williams*, 1 Salk. 384, a married woman was indicted jointly with her husband for keeping a bawdy-house. In the opinion of the court it is said : " The keeping is not to be understood of having or renting in point of property, for in that sense she can not keep it; but the keeping here is the *governing* and *managing* a house in such a disorderly manner as to be a nuisance."

In *Commonwealth* v. *Mann*, 4 Gray, 213, a clerk who kept the owner's books took orders for coal, collected and paid bills, was convicted of maintaining a nuisance by means of the

coal yard, from which large quantities of coal dust were emitted. It was held that he was rightly convicted if he, with a knowledge of what was done, aided, promoted and encouraged the doing of the acts which constituted the offense.

In *Commonwealth* v. *Kimball*, 105 Mass, 465, under an indictment for keeping and maintaining a house as a liquor nuisance, it was held that proof that the defendant was present, having the entire control and superintendence of the house, however brief the time, will sustain the indictment, although he was only the clerk or servant of the householder. Of a like import are the following cases : *Commonwealth* v. *Drew*, 3 Cush. 279 ; *Commonwealth* v. *Gannett*, 1 Allen 7 ; *Commonwealth* v. *Tryon*, 99 Mass. 442 ; *Commonwealth* v. *Burke*, 114 Mass. 261 ; *Commonwealth* v. *Dowling*, 114 Mass. 259.

Judgment affirmed.