# LAURA A. WALCOTT *v.* METROPOLITAN LIFE INS. CO.

*Life Insurance. Presumption against suicide. Practice. When verdict should be directed.*

1. In case of death from unexplained cause the presumption is against suicide.

2. When a life insurance company seeks to avoid payment of its policy upon the ground that the death of the insured was caused by his own act, the evidence must affirmatively show that fact.

3. If the defendant, without introducing any evidence upon its own part, moves for a verdict at the close of the plaintiff's evidence, it thereby admits the truth of such evidence, and the case should be disposed of accordingly.

4. The evidence of the plaintiff having shown the death of the insured and the making of the requisite proof, *Held*, that the court should have directed a verdict in her favor for the full amount of the policy.

Assumpsit upon a policy of life insurance. Plea, the general issue, with notice of special matter. Trial by jury at the September term, 1890, Washington county, Munson, J., presiding. The court directed a verdict for the plaintiff. Both parties except.

The plaintiff herself testified to the death of the deceased, but knew nothing as to its cause or manner. In the course of her examination it appeared that following his death, which was in Missouri, an inquest was held before a coroner and jury, and that a certified copy of the findings of the jury had been sent the defendant. Counsel for the plaintiff, while doubting the admissibility of the document, stated his willingness that it should go to the jury. Counsel for the defendant pointed out certain inconsistencies in the same, having reference to the law of Missouri, but did not state whether he desired to have it admitted or not.

At the close of the plaintiff's own testimony, one Boyce was introduced as a witness, who testified that he acted as the administrator of the deceased and the attorney for the plaintiff and as such visited the office of the defendant, and that he was informed there that the deceased had paid certain premiums, for which he held receipts, upon the policies. After this the plaintiff introduced the policy itself and rested.

The defendant thereupon objected that there was nothing in the case to show that any proof of death had ever been made. Upon this objection, the court permitted the plaintiff to withdraw her rest, and to inquire further of the witness Boyce, who testified that he sent proofs of death and had received an acknowledgement of their receipt from the defendant. He was now cross-examined as follows:

" Q.    Have you received any other communication whether the proof was satisfactory except this check, and the letter accompanying it?    A.    No, sir.

Q.    Why did the company refuse to pay this policy ?

A.    I never had any explanation further than these letters.

Q.    Did they tell you they refused to pay it because the man committed suicide ?

A.    No, sir.    They said they should investigate the proof and let me know later.

Q.    You sent on the proofs of death to them ?    A.    Yes sir.

Q.    What was the cause of death alleged therein ?    Objected to.

Mr. Shurtleff—Produce your letters and papers; those are the best evidence ; I don't object if he is allowed to state the whole of it, what the papers contained.

The Court—You may ask the question with that understanding.

Q.    Is that one of the documents you sent to the company —handing a paper to the witness.

A.    No, sir.    I should say not; it may be a copy of it or seme parts of what I sent, and I am not sure but what this may be one of them (examining paper) on examination of the paper I should say this was one of the papers I sent them.

Q.    What other papers did you send them ?

A. I do not recollect whether any or not; I could not without thinking it up, and looking at the correspondence.

(Marked defendant's exhibit A.)

Q. Where did you procure this paper?

A. It was handed to me by Laura A. Gamble, plaintiff in this suit.

Q. And transmitted by you to the company as one of the proofs of death?

A. It was.

Q. You have read this?

A. I have looked it over when it was handed to me.

Q. It purports to be a copy of the findings of the coroner's jury does it not?

A. Something of that purport.

Q. Wherein they report that the cause of this man's death was insanity?

A. Yes, sir; precisely.

Q. Didn't you have correspondence with the company so that you knew what the company claimed in respect to this policy?

A. I do not recall that there was any correspondence or conversation when I saw them about that matter at the home office; it was one of the adjusters of the claims on the one thousand dollar policies; they were divided into departments, and this man's office was near the top of the building, but we had very little conversation at the time and it was mentioned by him to me that there was such a clause in their policy, that there was such a clause in regard to suicide.

Q. That the company would not be liable if the insured suicided?

A. They called my attention to the clause and said they should want to have the proofs, and in some letter I think they wrote me what they would want, or what they would like and I forwarded such proof as I understood they wanted, and there was never a word said when they sent me the check.

Q. They refused to pay the policy because the insured committed suicide?

A. They did not refuse to pay in any way, and I do not recall the letter, but I understood that if she accepted that, that she was to receipt in full for everything.

Q. Didn't you have communication with the company by writing? didn't you write them considerable on the subject?

A. I do not recall writing more than three or four times.

Q.  Do you remember writing a letter in September, 1888, in which you sent them a finding of this Coroner's inquest out there with the names of the jury?

A.  I might have; I don't remember now; in some other letter at some time, I sent what was furnished me as a copy of the Coroner's proceeding and the jury.

Q.  Advising the company that this man committed suicide?

A.  I might have used that.

Q.  Didn't you send them a copy of the coroner's findings?

A.  Yes, sir.  Certainly; I sent them some paper, and I think that was it.

Q.  When were you in New York?

A.  I think I was there in October; and I think I have been there two or three times; twice, one time was in October I think.

Q.  Hadn't you before that notified the company that you held this claim—that W. A. & O. B. Boyce held it, and they must pay it?

A.  I think the first communication I wrote them was to the effect of that, before I was through there.

Q.  Don't you remember that you had communicated to them the fact that this man had died, and that you made a claim, before you went to New York?

A.  I should rather think I did, and rather think I mentioned the substance of the coroner's verdict.

Q.  When you were in New York at the company's office, didn't you have conversation with the officers about paying the claim, to ascertain the grounds they refused upon?

A.  I have not seen any of the principal officers since the proofs were admitted in regard to the matter, the adjuster said he would not take the responsibility, but the question was raised and he talked it over.

Q.  That question of suicide?

A.  I had written to him about it and he said he would not take any responsibility to say whether they would or would not, until he conferred more fully with the other officers of the company; and that was distinctly understood between us two, the substance of the coroner's investigation, that was talked but he did not commit himself, he was reticent about saying anything the first time I saw him to see whether the matter was paid, and how it stood on the books.

Mr. Porter—This document which he testifies was a part of the proof of death, I suppose is in evidence?

The Court—It is not in necessarily, unless you offer it ; do you offer it?

Mr. Porter—No, I do not offer it.

Mr. Shurtleff—Is there anything further from Mr. Boyce ?

Mr. Porter—No.

Mr. Shurtleff—We now rest then. We are. willing that that document shall go in evidence ; we do not want to put it in subject to any objection. I thought by the way Mr. Porter referred to it the last time that it might go in by mutual agreement.

Mr. Porter—I think there is enough in evidence to raise the question we make in this case, that is the right of the plaintiff to recover under this contract. The company sets forth, and it is stated in the contract that the company will not be liable in the case of suicide of the insured in the event of his dying by his own hand, whether sane or insane. Under the terms of this policy we say the plaintiff cannot recover. There is no proof in the case so far as I can see that there was any case of insanity, but whether sane or insane at the time the act was committed, we say they cannot recover under the provisions of the policy in that behalf, and we ask the direction of a verdict to that end.

Mr. Shurtleff—We have a right to go to the jury as to the condition this man's mind was in, we claim the right to go to the jury on the question whether it is not such a case as we have the right to recover upon."

The policy provided that in case of death by suicide the company should be liable only for the amount of the premiums paid without interest.

At the conclusion of the plaintiff's case the defendant moved for a verdict, which motion was overruled. Thereupon the plaintiff moved for a verdict for the amount of the policy. This motion the court also overruled, and gave judgment for the plaintiff in the amount of the premiums paid.

*Boyce & Shurtleff*, for the plaintiff.

*Arnoux, Ritch & Woodford*, and *Dillingham & Huse*, for the defendant.

It was practically a conceded fact in the case that the deceased died by his own hand. That being so, the plaintiff can-

not recover under the conditions of the policy. *Bigelow* v. *Berkshire Life Ins. Co.*, 93 U. S. 284; *DeGogorza* v. *Knickerbocker Life Ins. Co.*, 65 N. Y. 232; *Northeastern Ins. Co.* v. *Haslett*, 105 Ind. 218; *Pierce* v. *Travelers' Ins. Co.*, 3 Ins. Law Jr. 422; *Van Zandt* v. *Mutual Benefit Co.*, 55 N. Y. 169; *Schmidt* v. *Home Life Co.*, 8 Ins. Law Jr. 77 (Ohio); *Atakins* v. *Columbia Life Ins. Co.*, 70 Mo. 27; *Scarth* v. *Security Soc.*, 75 Iowa, 346; *Streeter* v. *Western Soc.*, 8 W. Rep. 183 (Mich.); *Clift* v. *Schwabe*, 3 C. B. 437.

The opinion of the court was delivered by

THOMPSON, J.  The plaintiff seeks to recover the amount of a policy of insurance on the life of Andrew J. Gamble, under which she as his widow is the beneficiary.

Among other conditions in the policy is the following: " The liability of said company shall not be deemed to cover the risk of death by suicide; but in the event of the life insured dying by his own hand or act, whether sane or insane, said company shall be held only, upon the surrender of this policy, accompanied with proofs of death, as herewithin provided, to return to the said assured the sum of the net premiums previously received, without interest."

The policy of insurance declared on was put in evidence by the plaintiff.  She also introduced evidence of the death of the insured, the payment of the premiums that had become due on the policy according to its terms, at the time of his death, and of the furnishing the defendant with satisfactory proof of his death.

The plaintiff testified in substance that the insured died sometime during the night of Aug. 10, 1888, and that she learned of his death about six o'clock the following morning; that about three weeks before his death they had a little girl about a year old die to whom he was very much attached, and that her death so affected him that he became low spirited, melancholy, and

unable to sleep or rest nights, to such an extent that it affected his health and caused him to keep his room; that on the night of Aug. 10, 1888, he retired to his bed with his wife, the witness, as usual, and got up at half past eleven in the evening and went out, stating as he went out the purpose for which he was going, " and that he would be right back again ;" that the witness being tired, fell asleep and did not awake until morning, and that she never saw him again alive.　The reporter's certified transcript of the case shows that the counsel for the plaintiff admitted on trial that a coroner's inquest was had respecting the death of the insured, and that certain findings were made in respect thereto by the coroner's jury.　It also appeared that a certified copy of the findings of the coroner's jury was furnished the defendant by the plaintiff with the proof of the death of the insured, and that the defendant's attorney had this copy in court during the trial of the case below; that the plaintiff offered to put the same in evidence, if the defendant would permit her to do so without objection, or to permit the defendant to put the same in evidence without objection, but the defendant declined to put the same in evidence itself, or to permit the plaintiff to do so.　W. A. Boyce, one of the plaintiff's attorneys, testified in her behalf, and on cross examination was shown the copy of the findings of the coroner's jury and admitted that it was one of the papers which he sent with the proof of death to·the defendant, whereupon he was interrogated by the defendant as follows :

"Q.　It purports to be a copy of the findings of the coroner's jury, does it not?

A.　Something of that purport.

Q.　Wherein they reported that the cause of this man's death was insanity ?

A.　Yes sir ; precisely."

There was no other evidence excepting as above stated tending to show the circumstances attending the death of the insured or the cause of his death.　The defendant introduced no evidence but at the close of plaintiff's case rested and moved the

Court to direct a verdict in its behalf on the ground that the plaintiff's case showed that the insured committed suicide, or died by his own hand, sane or insane, and that the Company was not liable by virtue of the exception quoted.

It is not necessary for us to decide as to the admissibility of the finding of the coroner's jury, either alone or as a part of the proof of death, as that question is not raised by either side. As the case stood when this motion was made and when the case was disposed of by the Court below, there was no evidence tending to show that the insured committed suicide or died by his own hand, sane or insane. It is to be assumed that the witness Boyce correctly stated the finding of the coroner's jury as to the cause of the death of the insured, otherwise the defendent would have put in evidence the proof of death furnished, and which included a copy of this finding. If it were true " that the cause of the man's death was insanity," that fact had no tendency to prove that he committed suicide, or died by his own hand, sane or insane. Insanity, as well as fever or any other disease, may cause a natural death. Nothing appearing to the contrary, whether a man die from the effects of insanity or any other disease, the legal presumption is that he died a natural death from natural causes, and not from an act of self-destruction. A person is found dead; the presumption is that his death was natural or accidental. The mere fact of death in an unknown manner creates no legal presumption of suicide or the taking of one's life by his own hand or act. Upon evenly balanced testimony, the law assumes innocence rather than crime. Laws. Presump. Ev. 192; May on Ins. (2d Ed.) s. 325; *Mallory* v. *Travelers' Ins. Co.* 47 N. Y. 52, (7 Am. Rep. 410); *Cronkhite* v. *Travelers' Ins. Co.* 75 Wis. 116, (17 Am. St. Rep. 184); *Freeman* v. *Travelers' Ins. Co.* 144 Mass. 572, (4 N. E. R. 621).

*Travelers' Ins. Co.* v. *McConkey*, 127 U. S. 661, (L. Ed. Book 32, 308), was an action upon an accident policy of insurance. The defence was: (1) That the death of the insured was caused

by suicide; (2) That it was caused by intentional injuries inflicted either by the insured or by some other person. The Court below instructed the jury that, " it is manifest that self-destruction cannot be presumed. So strong is the instinctive love of life in the human breast and so uniform the efforts of men to preserve their existence that suicide cannot be presumed. The plaintiff is therefore entitled to recover unless the defendant has by competent evidence overcome this presumption and satisfied the jury by a preponderance of evidence that the injuries which caused the death of the insured were intentional on his part. The presumption is that the death was not voluntary; and the defendant, in order to sustain the issue of suicide on his part, must overcome this presumption and satisfy the jury that the death was voluntary." The U. S. Supreme Court by Harlan, J., on this question, say: " In respect to the issue as to suicide, the Court instructed the jury that self-destruction was not to be presumed. In *Mallory* v. *Travelers' Ins. Co.* 47 N. Y. 52—which was a suit upon an accident policy,—it appeared that the death was caused by accidental injury or by the suicidal act of the deceased. ' But,' the court properly said, ' the presumption is against the latter. It is contrary to the general conduct of mankind; it shows gross moral turpitude in a sane person.' Did the court err in saying to the jury that, upon the issue as to suicide, the law was for the plaintiff, unless that presumption was overcome by competent evidence? This question must be answered in the negative. The condition that direct and positive proof must be made of death having been caused by external, violent, and accidental means, did not deprive the plaintiff, when making such, proof, of the benefit of the rules of law established for the guidance of courts and juries in the investigation and determination of facts." The case being barren of any evidence tending to show that the insured took his own life, and the presumption of law being to the contrary on the facts shown, the court below properly denied the defendant's motion to have a verdict directed for it.

There being no evidence tending to show self-destruction by the insured, there is no occasion to pass upon the legal effect of this condition in the policy as affecting the right of recovery in a case where the insured, being sane or insane, destroys his own life.

2. The plaintiff also moved the court to direct a verdict for her for the full amount of the policy, which motion the court denied and directed a verdict for her for the amount of the net premiums received by the defendant without interest. In this there was error. The defendant by its motion for a verdict on the evidence introduced by the plaintiff, admitted not only the testimony to be true, but also every conclusion which a jury might fairly or reasonably infer therefrom. *Parks* v. *Ross*, 11 Howard (U. S.) 372, (L. Ed. Book 13, 730). After its motion was overruled, the defendant did not then ask to go to the jury on any question raised by the evidence, but elected to stand upon its motion for a verdict and its exception to the ruling of the court denying it. As the case then stood, the undisputed evidence clearly established the right of the plaintiff to recover the full amount of the policy, and a verdict to that effect should have been directed for her. There was no conflict of evidence, and it, with the inference of law arising therefrom, directly proved the facts in issue. *Lindsay* v. *Lindsay*, 11 Vt. 621; *Wilder* v. *Wheeldon*, 56 Vt. 344; *Noyes* v. *Rockwood*, 56 Vt. 647; *St. Johnsbury* v. *Thompson*, 59 Vt. 300; *Latremouille* v. *Bennington & Rutland Ry. Co.*, 63 Vt. 336.

*Judgment reversed and cause remanded for new trial.*

TAFT, J., dissenting.

This action was brought to recover upon a policy of life insurance. The death of the assured was conceded, and therefore the plaintiff was entitled to recover. If the assured died by his own hand or act, sane or insane, the plaintiff was entitled to recover the net premiums paid on the policy. If he did not die by suicide, she was entitled to recover the amount insured. The

opinion of a majority of the court states: "There was no evidence tending to show that the insured committed suicide, or died by his own hand, sane or insane." If this was true, a verdict should have been ordered for the amount insured; but, was it? In putting in the evidence the defendant claimed: "The fact is, this man committed suicide." This shows the defendant's claim, and Mr. Boyce, the plaintiff's agent or attorney, testified that he sent the defendant the findings of the coroner's jury in connection with, and as a part of, the proofs of loss, and responded to this inquiry— "Q. Advising the company that this man committed suicide?"—by answering: "I (it, the proofs) might have used that term." I think this testimony of Mr. Boyce had a tendency to show death by suicide, and in that view of the case, that question should have been submitted to the jury to determine which sum should be recovered; the amount of the net premiums, or the amount insured; and the disposition of the case by the majority of the court is correct; but I think the fair construction of the exceptions is, that not only was there testimony tending to show death by suicide, but that that fact was conceded upon trial. A large part of the testimony given upon the trial, was upon the question of the insanity of the insured at the time of his death. Mr. Shurtleff says: "We will examine the witness further with reference to the condition this man was in, immediately prior to his death." Whether the testimony to show insanity should come from experts was a question made by the defendant's counsel, and passed upon by the court. The testimony strongly tended to show insanity, and when it was all in, the position of the plaintiff is shown by the claim made by Mr. Shurtleff, and it was the only question which he wished to have submitted to the jury. "We have a right to go to the jury as to the condition this man's mind was in. We claim the right to go to the jury on the question, whether it is not such a case as we have a right to recover upon." In other words, it was in

effect saying, this man committed suicide, and we have a right to recover, because at the time he suicided, he was insane.

The counsel say in their brief, that the fact of suicide was not admitted, and comment. "How the court could assume upon this evidence to direct a verdict, is beyond comprehension." The whole testimony aside from the relationship of the parties, and the fact of death, was upon the question of insanity. What the counsel were introducing testimony upon the question of insanity for, unless the fact of suicide or testimony tending to show it, was in the case, is as incomprehensible to me as ordering a verdict seems to have been to them, for under no conceivable circumstances was it pertinent unless the man died by his own hand. Unless the fact of suicide was in, the only charitable explanation to be given the conduct of every one connected with the trial is, that the evidence upon, and the discussion connected with the question of insanity of the assured, had so upset the minds of both court and counsel, that for the time being they were afflicted with the same disease. Giving the exceptions the construction that I do, is the only way you can consistently account for the conduct of the counsel, or the action of the court.

I would affirm the judgment.